ADAM ECKERT et al., petitioners and respondents,

*v.*

THE PERTH AMBOY AND WOODBRIDGE RAILROAD COMPANY,
defendant and appellant.

[Argued June Term, 1903.   Decided November Term, 1903.]

1. It is not necessary that the extra hazardous condition existing at a
crossing shall have been caused by the railroad company to justify the
court of chancery in making the decree authorized by the act entitled
"An act for the protection of railroad crossings," approved March 16th,
1898.  It is only necessary that conditions exist at a crossing, at the time
the petition is filed by the governing body of a municipality under said
act, which make it reasonable and necessary for the security of human
life or the protection of the public, that gates or bars, or other reasonable
provision for protecting such crossing, shall be erected and maintained.

2. The act of March 16th, 1898, is not unconstitutional under article
3 of the state constitution.  It does not confer upon the judiciary powers
which belong exclusively to the legislative department of government.

On appeal from a final decree of the court of chancery ad-
vised by Vice-Chancellor Pitney.

*Mr. Alan H. Strong,* for the appellant.

*Mr. Charles C. Hommann,* for the respondents.

The opinion of the court was delivered by

FORT, J.

The petition in this case was filed by the governing body of the
city of Perth Amboy, praying that an order be made by the
court of chancery, directing the defendant company to protect
by gates, bars, or a flagman, the crossing at Hall avenue and
Washington, William and Broad streets in that city.   Testi-
mony was taken on the petition, and the court, having found

that some protection was necessary at said crossing for the security of human life and the protection of the public, ordered that gates or bars, which may be raised or lowered as occasion may require, shall be erected and maintained across Broad, Washington and William streets and Hall avenue within three months of the date of the service of the decree upon the defendant company, and it was further ordered that the defendant company pay the costs of the application.

Under the proofs in the cause the court of chancery was justified in finding that the erection of gates or bars, or the placing of a flagman at the several crossings in question, was necessary for the security of human life and the protection of the public.

It was contended, on behalf of the appellant, that to justify an order of the nature of that made in this case, it must not only appear that the crossing is a dangerous one, but that the danger is in consequence of some action of the railroad company and not the result of other causes, such as the growth of the population, or the erection of obstructions adjacent to the railroad track by others than the railroad company.

These proceedings are entirely statutory. The petition was filed and the order was made pursuant to the power conferred upon the court of chancery by the act entitled "An act for the protection of railroad crossings," approved March 16th, 1898. P. L of 1898 p. 110.

By the terms of the statute, whenever a condition arises which makes it appear to the satisfaction of the chancellor, after a hearing, upon a petition filed by the governing body of any municipality, that it is reasonable and necessary for the security of human life, or the protection of the public, that gates or bars should be erected or maintained, or a flagman should be stationed at a crossing, the court shall make an order or decree to that effect.

Before the governing body shall make such application it is required to adopt an ordinance directing such application to be made.

The statute, as we construe it, operates upon the situation as it exists at the time of the filing of the petition under the act. If then, from any cause, a condition exists which makes

it reasonable and necessary for the security of human life, or the protection of the public, that the safeguards authorized by the statute be decreed to be erected and maintained, the court may so order.

The principle of the decision in *Matthews* v. *Pennsylvania Railroad Co., 7 Vr. 531,* has no application to this proceeding. This proceeding is not based upon any question of negligence in the railroad company. It is not a question between an individual and the railroad company. It is simply one as to the regulation of the railroad company by the state in the interests of the safety of the public.

Railway corporations, without any express reservation of the powers over them by the legislature in their charter, are subject, like individuals, to be restrained, limited and controlled in the exercise of their powers by such laws as the legislature may pass, based on the principles of safety to the public. *State* v. *Noyes, 47 Me. 189; Railroad Company* v. *Riblet, 66 Pa. St. 81, 164; Boston C. & M. R. R. Co.* v. *State, 32 N. H. 215; Thorpe* v. *Rutland Railroad Co., 27 Vt. 140; People* v. *B. & A. R. R. Co., 70 N. Y. 569.*

Our own supreme court has held it within the power of the legislature to confer upon municipalities authority to require a railroad company to place a flagman at a crossing. *Delaware, Lackawanna and Western Railroad Co.* v. *East Orange, 12 Vr. 127.* Indiana and Georgia have likewise so held. *Western Railroad Co.* v. *Young, 81 Ga. 397; Pennsylvania Railroad Co.* v. *Stegemeier, 118 Ind. 305.*

The case of *Matthews* v. *Pennsylvania Railroad Co., supra,* was clearly differentiated by Vice-Chancellor Grey in *Palmyra* v. *Pennsylvania Railroad Co., 17 Dick. Ch. Rep. 611,* from proceedings in chancery under the statute of 1898.

The opinion of the learned vice-chancellor in that case was approved in this court and declared to contain its reasons for affirmance here. *Palmyra* v. *Pennsylvania Railroad Co., 18 Dick. Ch. Rep. 799.*

The other ground assigned for reversal is that the act of March 16th, 1898, *supra,* is unconstitutional in that it is in conflict with article 3 of the state constitution, which declares:

"The powers of government shall be divided into three distinct departments—the legislative, executive and judicial—and no person or persons belonging to or exercising one of these departments, shall exercise any of the powers properly belonging to either of the others, except as herein expressly provided."

The full force and scope to be given to this clause will be found lucidly discussed by Mr. Justice Dixon in *Ross* v. *Freeholders of Essex, 55 Atl. Rep. 310*. That learned justice declares: "It should be noted that the force of this clause is not to confine the legislature to powers which are legislative, the governor to powers which are executive, and the courts to powers which are judicial, but merely to forbid each department to encroach upon the powers properly belonging to another. The powers properly belonging to each of these departments, and therefore forbidden to the others, are those assigned under the general terms 'legislative power,' 'executive power' and 'judicial power,' and also those specifically delegated by the constitution to the senate and general assembly or to the governor or to the courts."

Mr. Justice Van Syckel, in *Paul* v. *Gloucester County, 21 Vr. 610*, says that "this constitutional clause relates only to those powers which by the constitution itself are assigned to, or which, in their nature, pertain to one of these departments *exclusively*.  *  *  * But there is a multitude of governmental duties which have never been and cannot possibly be performed either by the legislature or the governor, and which are certainly not prescribed by the constitution to the judiciary."

We deem the act of 1898 entirely unobjectionable on the constitutional ground stated. It is a statute restrictive in its operation. We have seen that it has been held by our supreme court to be within the power of the legislature to confer upon a local municipality, acting upon reasonable cause, power to require a railroad company to station a flagman at a dangerous crossing. It would be equally within its authority to confer the power to require the erection of gates or bars at such a crossing. These powers are within the police power of the state for the protection of the lives or safety of its citizens.

Is it possible to construct a theory upon which it can be said

that the legislature, in granting to a municipality this right, may not require of it that the railroad company shall be entitled to a judicial hearing before its duty to safeguard the crossing shall become imperative?

Under the act of 1898 the legislature has enacted that before the municipal body shall petition the court it shall be of opinion that it is necessary for the safety of human life, or the protection of the public, that gates shall be erected or some other reasonable provision made for protecting the crossing, and that before making such application it shall pass an ordinance directing such an application to be made.

The state itself could, by statute, take into its own hands, without using the municipal agency, the protection of railway crossings, and when it confers this power upon its agent it can condition or limit it, as it chooses.  By the act of 1898 it has only conferred the initiative upon the municipal bodies of the state and vested in the court of chancery, after hearing, the right to finally order whether the petition of the municipality, authorized by its ordinance, shall be granted.

The enforcement of police regulations has from time immemorial been through the courts.

To us it seems that the procedure pointed out in the act of 1898 is clearly judicial in character and strictly within judicial cognizance, and upon this branch of the case we adopt the language of Vice-Chancellor Grey in *Palmyra* v. *Pennsylvania Railroad Co., supra,* wherein he says:

"General legislative regulations could not possibly provide for the special emergencies arising at particular crossings calling for appliances to make each crossing safe which are peculiar to that spot.   In some cases one method would fitly afford relief, in other cases another.

"Remedies for these exigencies must be provided.   The functions to be exercised in providing them cannot be deemed to be legislative.   The legislature has no means of investigating and determining the questions which these conditions raise, or of directing the installing of the additional safeguard which each particular crossing may require, because of its own peculiarities.   If it attempted to hear and determine disputes between

municipalities and railroad companies as to their respective rights and duties at each particular crossing, the parties must be noticed, a hearing must be had, evidence must be produced and its admissibility ruled upon, argument must be heard and considered and a judgment must be pronounced.

"These incidents are inherently necessary to the accomplishment of the desired result, *i. e.*, the ascertainment whether at a particular crossing it is the duty of a particular railroad company to provide additional safeguards, because of the situation of affairs there existing. Such a procedure by the legislative department, in any mode of its action, would certainly go much further to intrude upon powers properly belonging to the judicial department than the exercise of the powers conferred by the statute of March 16th, 1898, upon this court—would be an intrusion upon the legislative field."

The decree of the court of chancery is affirmed.

*For affirmance*—The Chief-Justice, Dixon, Garrison, Fort, Garretson, Hendrickson, Pitney, Swayze, Bogert, Voorhees, Vroom, Green—12.

*For reversal*—None.