ATLANTIC CITY RAILROAD COMPANY, PROSECUTOR, v. CITY OF PLEASANTVILLE AND CHARLES JACKSON, MAYOR, ETC., RESPONDENTS.

Argued November 8, 1923—Decided April 2, 1924.

1. A municipal ordinance limiting the speed of railroad trains at all points within the municipal limits, *held*. illegal in view of section 22 of the Railroad act of 1903 in a case where such act is applicable.
2. The legislation creating the public utility commission and investing it with power to regulate the operation of railroads. and to protect and if necessary abolish grade crossings, *held*, a general scheme superseding former statutory regulation within its purview.
3. The fact that a railroad company may appeal to the utility commission from a municipal regulation cannot affect the jurisdiction of this court on *certiorari*.

On *certiorari*.

Before Justices TRENCHARD and PARKER.

For the prosecutor, *Thompson & Hanstein.*

For the respondents, *Louis D. Champion.*

The opinion of the court was delivered by

PARKER, J.   The writ brings up for review an ordinance of Pleasantville adopted in March, 1923, and a conviction of the railroad company thereunder.   The first section of the ordinance provides that "the speed of all railroad trains pass-

ing through the limits of the city of Pleasantville shall not, within the corporate limits of said city, exceed the speed [sic] of twelve miles per hour." Section 2 prescribes penalties for violation, and section 3 repeals inconsistent ordinances.

By a complaint in writing the prosecutor railroad company was charged with violation of this ordinance, and after hearing, convicted and fined $200, being a sum not in excess of that prescribed in the ordinance.

The broad question raised on this writ is whether the city had power to pass and enforce this ordinance.

The Charter act (*Pamph. L.* 1897, *p.* 46; *Comp. Stat., p.* 1297), by section 18 (XI) confers power "to regulate the speed and running of locomotive engines and railroad cars * * * through said city, and to designate the crossings at which any railroad company shall be required by the common council to station flagmen or signals to warn travelers of the approach of locomotive engines or railroad cars."

But this seems plainly to be controlled by the General Railroad act of 1903 (*Comp. Stat., p.* 4230, § 22), which authorizes railroads to run at such rate of speed as they deem proper when they have protected their tracks by a specified character of fence where they adjoin a public highway, and by gates properly operated, at street crossings. The section goes on to say that "in the absence of such protection and safeguard, the company shall be bound by lawful and reasonable municipal ordinances regulating the speed of its trains *along* streets and *at* crossings." (Italics ours.)

The obvious meaning of this act as bearing on fences, is that they are requisite when the tracks run "along" a street, *i. e.,* either longitudinally in the street, or perhaps on one side of it and adjoining it; certainly not when they run through a block, as in the case here. The words are "adjoin" and "along." Consequently, it would seem that the fence requirement is not applicable to the present case, in which the tracks do not adjoin a street nor run along it. But the requirement of gates at crossings is applicable. It appears that one of three crossings is protected by gates, and that the other two are not. If, then, section 22 of the Railroad

act is applicable, the municipality has power by lawful and reasonable ordinance to regulate the speed of trains at the two crossings not protected by gates. But it has attempted much more than this, viz., to regulate the speed at all points within the city limits, including the gate crossing. We think it has exceeded its powers in this regard, and as the conviction is of running a train generally in the city at over twelve miles an hour, based solely on evidence ·that it was so run at the protected Main street crossing, the conviction cannot stand. The ordinance being general in its terms and not discriminating or separable as to ungated crossings, or even as to portions of track running through a block between two crossings, is in our opinion illegal and should be set aside.

There is another reason why the present conviction should not stand, and that is that by a course of legislation beginning in 1911 and continued to the present time, the supervision and regulation of railroad crossings throughout the state have been substantially turned over to the public utility commission. It is sufficient for present purposes to cite the act of 1914 (*Pamph. L., p.* 340; *Supp. Comp. Stat., p.* 1290), which is comprehensive in its language, expressly mandatory in its requirements, and fully applicable to the present situation. It appears in fact that the public utility commission has dealt with the crossings in Pleasantville and that the railroad company has complied with its requirements and to some extent exceeded them. When the various acts on this subject, including that conferring power to abolish grade crossings entirely, are examined, it will be apparent that the fundamental general rule that a railroad is entitled to run at such speed as it deems proper on its own tracks is fully recognized, and the regulation of railroads in such manner as to preserve the safety of the public has been entrusted to the commission. This is a general legislative scheme, and as such supersedes other inconsistent legislation. *Harrington* v. *Jersey City,* 78 *N. J. L.* 610.

It is argued that the present writ should be dismissed because the prosecutor was entitled to appeal to the utility board

to review the ordinance. *Pamph. L.* 1911, *p.* 29, § 9; *Supp. Comp. Stat., p.* 1307. Perhaps it could have done so, and obtained an order permitting it to disregard the ordinance, but it is quite plain that the legislature did not intend to clothe the utility board with power to review as on *certiorari* the jurisdiction of the city to enact this ordinance, and on this phase of the case prosecutor is entitled to invoke the action of this court in the first instance.

The ordinance and conviction are set aside, with costs.