13 N.J. Super. 540 (1951)
81 A.2d 28
PENNSYLVANIA-READING SEASHORE LINES, APPELLANT,
v.
BOARD OF PUBLIC UTILITY COMMISSIONERS, DEPARTMENT OF PUBLIC UTILITIES, STATE OF NEW JERSEY AND NEW JERSEY STATE HIGHWAY DEPARTMENT, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 23, 1951.
Decided May 11, 1951.
*542 Before Judges EASTWOOD, BIGELOW and FREUND.
Mr. John Lloyd, Jr., argued the cause for the appellant (Messrs. Lloyd & Horn, attorneys).
Mr. Frank A. Mathews, Jr., argued the cause for the respondents (Mr. Theodore D. Parsons, Attorney-General, attorney).
*543 The opinion of the court was delivered by EASTWOOD, J.A.D.
The Department of Public Utilities, Board of Public Utility Commissioners (hereinafter referred to as the "board"), approved the application of the State Highway Department "to construct State Highway Route 4 at grade over the Stone Harbor Branch of the Pennsylvania-Reading Seashore Lines" (hereinafter mentioned as the "railroad"), and ordered the railroad to install and maintain warning signals and safety devices.
Concisely, the conceded pertinent facts are: The State Highway Department presently is constructing State Highway Route 4, extending in a northerly-southerly direction almost the entire length of the State, its southerly terminus being Cape May City. The highway, at the proposed crossing, will be a dual one, separated by an island, with a concrete pavement 24 feet wide for each of the north-bound and south-bound lanes of traffic. It is anticipated that Route 4 will carry a considerable volume of automobile traffic. By reason of the fact that the proposed highway will intersect the Stone Harbor Turnpike, the crossing will have an over-all width of 317 feet. Presently, the railroad has no passenger service and but one customer at the southerly end of its line for transportation of freight. In the winter months, the railroad operates approximately one trip per month and, in the summer months, five or six round trips per month, to transport freight to its one customer, the Stone Harbor Lumber Company. The trips are made either on Monday or Tuesday, as required, between noon and 3:00 p.m. In 1943, the railroad company's application to the Interstate Commerce Commission for permission to abandon the line was denied. More recently, another application to abandon made by the railroad was withdrawn when the lumber company interposed opposition thereto. The record indicates that the railroad did not raise any procedural questions before the board.
The railroad contends that the application was made by virtue of R.S. 48:2-28, and the board has no power to make the order. R.S. 48:2-28 provides:
*544 "No highway shall be constructed across the tracks of any railroad company at grade, nor shall any track over which locomotives, railroad or street railway cars are to pass be laid across any highway, so as to make a new crossing at grade, nor shall the tracks of any railroad, street railway or traction company be laid across the tracks of any other such company without first obtaining permission from the board.
This section shall not apply to the replacement of lawfully existing tracks."
The railroad company argues that merely because the application comes from another agency of the State, the board's permission should only be granted after due consideration is given to the interests of the railroad company and the public; that the Legislature, by the enactment of L. 1929, c. 88, R.S. 48: 12-68 et seq., adopted a declaration of public policy that required the State Highway Commissioner to formulate an annual program "for the elimination of railroad crossings at grade or State Highways" and that this public policy has since been continued in effect; that the board should have given consideration to the financial risk to the railroad attending the creation of the proposed crossing and the financial inequity in requiring the railroad company to install and maintain warning signals and other safety devices when viewed in the light of the fact that the line is only operated for the benefit of one customer; and that the fulfillment of the statutory conditions of R.S. 48:2-29 requires that there be a crossing in existence at the time the board makes its order. R.S. 48:2-29 provides:
"Whenever it shall appear to the board that a public highway and a railroad or a street railway, or that a railroad and a street railway, cross one another at the same level and that conditions at such grade crossing make it necessary that gates be erected or that some other reasonable provision for the protection of the traveling public be adopted, the board may order the railroad or street railway company or both, to install such protective device or adopt such other reasonable provision for the protection of the traveling public at the crossing as in the discretion of the board shall be necessary."
The parties are in accord that warning signals and safety devices will be required when the crossing is constructed. R.S. *545 Stewart, an official of the railroad, testified that "we feel if this crossing is permitted or ordered by the Board, it should be protected by flashing lights." Thus, the necessity for warning signals and safety devices being conceded, the sole question is whether the order requiring the railroad to install and maintain same is reasonably proper under the circumstances and whether it has been prematurely entered.
That the Legislature may empower a state commission to compel railroad companies to provide safeguards at crossings of railroads with highways and to determine the measures to be taken for the protection of the public traveling upon the highways, is settled law. Such a commission may be authorized to require the erection of gates or bars, or the maintenance of a flagman, at a grade crossing, where the public safety so requires. A railroad company takes its charter subject to the power of the State to provide for the safety of the public, insofar as the safety of the lives and persons of the people are involved in the operation of the railroad. The company here laid its tracks subject to the condition, necessarily implied, that their use could be so regulated by competent authority as to insure the public safety. And as all property, whether owned by private persons or by corporations, is held subject to the authority of the State to regulate its use in such manner as not to unnecessarily endanger the lives and the personal safety of the people, it is not a condition of the exercise of that authority that the State shall indemnify the owners of property for the damage or injury resulting from its exercise. Property thus damaged or injured is not, within the meaning of the Constitution, taken for public use, nor is the owner deprived of it without due process of law. The requirement that compensation be made for private property taken for public use imposes no restriction upon the inherent power of the State by reasonable regulations to protect the lives and secure the safety of the people. The expenses that will be incurred by the railroad in installing and maintaining warning signals and safety devices, if found to be reasonably necessary for the safe operations of its road, necessarily *546 result from the maintenance of a public highway, under legislative sanction, and must be deemed to have been taken by the company into account when it accepted the privileges and franchises granted by the State. Such expenses must be regarded as incidental to the exercise of the police powers of the State. Chicago, B. & Q.R. Co. v. Chicago, 166 U.S. 226, 41 L.Ed. 979, 17 Sup. Ct. Rep. 581 (1897); Eckert v. Perth Amboy and Woodbridge R.R. Co., 66 N.J. Eq. 437 (E. & A. 1903); Central R.R. Co. of N.J. v. Bd. Pub. Utility Commrs., 112 N.J.L. 559 (Sup. Ct. 1934); affirmed 114 N.J.L. 397 (E. & A. 1935).
In support of its argument that R.S. 48:2-29 is not applicable where the highway crossing is not in existence but is proposed to be constructed in the future, the railroad cites the case of Eckert v. Perth Amboy and Woodbridge R.R. Co., supra. In the Eckert case, the court construed L. 1898, p. 110, "An Act for the protection of railroad crossings," providing that "* * * whenever a condition arises which makes it appear to the satisfaction of the chancellor, * * * that it is reasonable and necessary for the security of human life, or the protection of the public, that gates or bars should be erected or maintained, or a flagman should be stationed at a crossing, the court shall make an order or decree to that effect," and the court held that the statute "operates upon the situation as it exists at the time of the filing of the petition under the act." In the Eckert case the court was considering the applicability of the statute with respect to the powers granted to municipalities and the Court of Chancery. However, with respect to the police power of the State, the court significantly remarked:
"Railway corporations, without any express reservation of the powers over them by the legislature in their charter, are subject, like individuals, to be restrained, limited and controlled in the exercise of their powers by such laws as the legislature may pass, based on the principles of safety to the public."

* * * * * * * *
"The state itself could, by statute, take into its own hands, without using the municipal agency, the protection of railway crossings, *547 and when it confers this power upon its agent it can condition or limit it, as it chooses. By the act of 1898 it has only conferred the initiative upon the municipal bodies of the state and vested in the court of chancery, after hearing, the right to finally order whether the petition of the municipality, authorized by its ordinance, shall be granted."
In addition to the authority granted to the board by virtue of R.S. 48:2-28, 29, the Legislature, in exercising its police power, vested the board with broad powers to supervise and regulate railroads. This delegation of power is set forth in R.S. 48:2-13, the pertinent part of which reads:
"The board shall have general supervision and regulation of and jurisdiction and control over all public utilities as hereinafter in this section defined and their property, property rights, equipment, facilities and franchises so far as may be necessary for the purpose of carrying out the provisions of this Title."
As Mr. Justice Parker stated in Atlantic City R.R. Co. v. Pleasantville, 99 N.J.L. 328 (Sup. Ct. 1924), at p. 330:
"* * * by a course of legislation beginning in 1911 and continued to the present time, the supervision and regulation of railroad crossings throughout the state have been substantially turned over to the public utility commission."
Cf. Erie R.R. Co. v. Board Public Utility Commrs., 107 N.J.L. 409 (Sup. Ct. 1931); affirmed 109 N.J.L. 264 (E. & A. 1932).
The railroad's argument that R.S. 48:2-29 is ineffective because the application here is for a proposed crossing, is not persuasive. Unquestionably, if the proposed crossing is constructed, the board may then, if warranted by the existing circumstances, direct the railroad to install and maintain warning signals and safety devices. We do not think that the statutory provision in question can be given such a narrow or limited construction as contended for by the railroad. Certainly, if the crossing is never actually constructed, the order will be meaningless. Therefore, if the board has the requisite authority  and we do not think this can be successfully challenged *548  it matters little whether the order is made prior to or subsequent to the construction of the crossing; provided, of course, that the conditions prevailing at the completion of the construction of the crossing are substantially the same as those represented to the board by the State Highway Department at the time of the making of the order.
The railroad contends further that under the proofs before the board, its discretion was not reasonably and properly exercised. The appellant states the applicable law, namely, the board's order must rest upon a "reasonable basis." W.J. & S.R.R. Co. v. Public Utility Bd., 87 N.J.L. 170 (E. & A. 1915). The order of the board must not be "extravagant in the light of the circumstances," and it must not have an improper "effect on economical management and service" of the railroad. Lehigh Valley R.R. Co. v. Board of Public Utility Commissioners, 278 U.S. 24, 49 S.Ct. 69, 73 L.Ed. 161, 62 A.L.R. 805 (1928). It must be based on evidence which "reasonably supports" it. Erie R.R. Co. v. Bd. Pub. Utility Com'rs., 87 N.J.L. 438 (Sup. Ct. 1915). The appellant argues that the Legislature has placed the entire expense of locating and constructing crossings of railroads and state highways not at grade, under certain conditions, upon the State Highway Department, and contends that the Legislature intended to similarly impose the cost of installing and maintaining safety devices at crossings at grade upon the highway department. We differ with appellant's view and think that the Legislature has purposefully enacted certain laws applicable to construction of crossings not at grade and others, as here, affecting grade crossings. The board found that:
"Upon consideration of the record as a whole the Board finds that establishment of the proposed grade crossing is in the public interest. The Board also finds that because of the extreme width of the crossing, the probably heavy traffic on the State Highway, and the complication of a local highway intersection immediately adjacent to the proposed railroad crossing, some effective means of protection such as flashing light warning signals should be provided to safeguard the public in the use of the crossing." *549 Our examination of the record leads us to the conclusion that there was evidence before the board to justify their action and to reasonably support it. Under such circumstances, this court will not disturb the adjudication of the board. Rahway Valley R.R. Co. v. Bd. Pub. Utility Com'rs., 127 N.J.L. 164 (Sup. Ct. 1941); New Jersey Power & Light Co. v. Borough of Butler, 4 N.J. Super. 270 (App. Div. 1949); Hohorst v. Marion Bus Transp. Co., Inc., 5 N.J. Super. 279 (App. Div. 1949).
The railroad contends further that the order results in a confiscation of its property, denies it the equal protection of the laws and the rights of its property without due process of law, citing the case of Nashville, Chattanooga & St. Louis Railway v. Walters, 294 U.S. 405, 55 S.Ct. 486, 79 L.Ed. 949 (1934). The Walters case is distinguishable from the case at bar. It reviews an order of the Tennessee State Highway Commissioner eliminating a grade crossing and imposing one-half of the total cost on the railroad company. The order here does not impose upon the railroad any part of the cost of the construction of the proposed crossing; consequently, that question is not before us. The question of the constitutionality of the delegation by the Legislature to the board of the authority exercised here is no longer open to challenge. In the case of Chicago, B. & Q.R. Co. v. Chicago, supra, Mr. Justice Harlan, speaking for the court, cited with approval the case of New York & N.E.R. Co. v. Bristol, 151 U.S. 556, 567, stating that in the Bristol case:
"* * * this court declared it to be thoroughly established that the inhibitions of the Constitution of the United States upon the impairment of the obligation of contracts, or the deprivation of property without due process or of the equal protection of the laws, by the states, are not violated by the legitimate exercise of legislative power in securing the public safety, health, and morals. `The governmental power of self-protection' the court said `cannot be contracted away, nor can the exercise of rights granted, nor the use of property, be withdrawn from the implied liability to governmental regulation in particulars essential to the preservation of the community from injury.'" *550 As stated in M. & E.R.R. Co. v. Orange, 63 N.J.L. 252 (E. & A. 1899), at p. 268:
"* * * `Uncompensated obedience to a regulation enacted for the public safety under the police power of the state is not a taking or damaging without just compensation of private property, or of private property affected with a public interest.'"
The decision and order of the board are affirmed.