Essex County Orphans Court.

IN THE MATTER OF THE ESTATE OF STANLEY S. HOLMES, DECEASED.

Decided August 4, 1938.

For the executor, Fidelity Union Trust Company, *Hood, Lafferty & Campbell.*

For the United States of America, *John J. Quinn,* United States attorney (by *Charles A. Stanziale*).

For A. J. Volk Company, *Rudolph Schroeder.*

For Florence B. Holmes, widow, *Joseph E. Conlon.*

HARTSHORNE, C. P. J. In the above insolvent estate, the question must be determined, in view of the shortage of assets, as to the relative priorities among the claims, all of which are preferred, of the United States government, for income taxes, of the undertaker, for funeral expenses, of the widow, for incidental funeral expenses, such as the burial plot and monument, and of the executor and its counsel, for commissions and allowances. All concede that the funeral expenses, incurred by both the undertaker and the widow, were reasonable and in conformity with the decedent's station in life, and that the commissions and counsel fees asked are also reasonable, in view of the services rendered.

Such priorities were established at common law, in general, as follows: (1) funeral expenses, assuming they were considered charges against the estate, and not mere debts; (2) administration expenses; (3) taxes. But these common law

priorities are, of course, subject to statute, and many such statutes have been enacted. At the time the decedent died, April 1st, 1935, it was provided in this state that, "judgments entered of record against the decedent in his lifetime, funeral charges and expenses, and the physicians' and nurses' bills during the last sickness, shall have preference, and be first paid out of the personal and real estate of the testator or intestate." *Pamph. L.* 1916, *p.* 62.

It was further provided that the estate assets, in case of insolvency, should be distributed, "the preferred debts, and the reasonable allowance which may be decreed by the court to the executor or administrator for care and expenses, being first paid." *3 Comp. Stat.* 1910, *tit. "Orphans Court," p.* 3852, § 110.

The provisions of the Revised Statutes are substantially identic. *Rev. Stat.* 1937, 3:25-2-51.

It has long been held in this state, in the light of these statutes, that "the claim for funeral expenses is not to be regarded as a debt at all, but as a charge upon the estate. Though grouped in the statute with other claims, also preferred, they are entitled to preference over those claims, as they are at the common law. The statute does not take away the absolute preference which the common law accorded. * * * The reason for such absolute preference still exists in full force. The dictates of humanity, no less than the decencies of enlightened society, demand that the reasonable funeral expenses and the physician's bill of the last sickness of the deceased debtor be preferred in payment to all other claims or debts." *Sullivan* v. *Horner,* 41 *N. J. Eq.* 299; *Young* v. *Conover,* 120 *N. J. L.* 267; 199 *Atl. Rep.* 390; 11 *R. C. L., tit. "Executors,"* § 289; 24 *C. J., tit. "Executors,"* §1153.

It is well settled that, under ordinary circumstances, reasonable expenditures for a burial plot and the erection of a monument are proper. *Griggs* v. *Veghte,* 47 *N. J. Eq.* 179. Nor would it seem to be material whether these necessaries were ordered by the representative of the estate or by a third party, such as the widow, as long as they were, in fact, necessary and proper. *Sullivan* v. *Horner, supra.* And the mere

fact that the estate was insolvent would not seem to make a place for burial and the marking of the grave any less essential than the funeral itself, though, of course, the expenditures therefor must, under such circumstances, be more carefully scrutinized. See note to *Wilson* v. *Staats*, 33 *N. J. Eq.* 524; 24 *C. J.* 92; *Boyer* v. *Cole*, 143 *Atl. Rep.* (*Delaware*) 489; *Crapo* v. *Armstrong*, 17 *N. W. Rep.* (*Iowa*) 41.

In like manner, the expenses attendant upon administration, including proper counsel fees, are considered a prior charge against the estate, not a mere debt. *Haines* v. *Price*, 20 *N. J. L.* 480, 484; *Fitz Randolph* v. *Fitz Randolph*, 121 *N. J. Eq.* 380; 189 *Atl. Rep.* 923.

While in the Fitz Randolph case the court does say that administration expenses "must and would be paid first," it is quite clear that the court does not thereby mean that same have priority over funeral expenses. For the court immediately thereafter alludes to the rule that "funeral expense is deemed a first paramount charge." All that the Fitz Randolph case, in fact, holds is that administration expenses must be paid first, before the ordinary creditors of the estate are satisfied.

As to taxes, they were, under the old common law, considered as debts due the Crown, and, as such, subject to funeral and administration expenses. 24 *C. J.* 92. It has since been settled, however, that "a tax, in its essential characteristics, is not a debt," but a "charge upon the land." *Camden* v. *Allen*, 26 *N. J. L.* 398; *Brunner* v. *Morrison*, 123 *N. J. Eq.* 224, 227; 196 *Atl. Rep.* 716.

Hence, the provisions of the federal statutes, requiring executors first to satisfy debts due to the United States, would seem inapplicable. *Rev. Stat.* 3466-7, as amended by *Statutes* 1934, § 518. What, then, is the status of this charge upon the land, as distinguished from a mere debt, even if to be paid before other debts? For there is no question that the similar charges upon the estate on behalf of funeral and administration expenses are to be paid before all other mere debts.

It has been held in this regard that a tax priority rests not upon the mere sovereign prerogative, but on the statute.

*United States* v. *Middle States Oil*, 18 *Fed. Rep.* (*2d*) 231.
It is provided by the Congress, as to federal internal revenue
taxes, that "if any person liable to pay any tax, neglects or
refuses to pay the same after demand, the amount shall be a
lien in favor of the United States from the time when the
assessment list was received by the collector    *    *    *."
March 4th, 1913, chapter 166, 1937 *Statutes* 1016; *U. S.
Compiled Statutes* 1918, *tit.* 35, *ch.* 2, § 5908.

What then is the status of this tax lien with relation to
funeral and administration expenses, themselves charges
against the estate? True, in case of conflict, the federal
statute is paramount. But, on the other hand, if we con-
strue the federal statute strictly, as we must, since it is in
derogation of the common law, we find nothing in the statute
which says that this tax lien shall be prior to the similar
charges or liens for funeral and administration expenses.
Such, indeed, is the implied construction placed by the fed-
eral courts upon this very lien act:

"It is quite another question whether the United States
is entitled to priority in enforcing the payment of a claim
for taxes. If any such priority exists, it plainly does not rest
upon statute, for there is no legislation by Congress upon that
subject and never has been any, except to create a lien, as
hereafter appears" (the court then citing the above Lien act).
*Liberty Mutual Insurance Co.* v. *Johnson Ship Yards Corp.,*
6 *Fed. Rep.* (*2d*) 752, 755.

While the court there concludes that in an equity insol-
vency proceeding, a claim for income tax is entitled to prior-
ity over the claims of unsecured general creditors, it appar-
ently would hesitate to hold such tax to have priority over
claims whose priority to taxes had never before been ques-
tioned. For it is not a question of the priority of one holding
a lien over an ordinary creditor, but as to priorities between
those each of whom hold different liens. And it has been
the undeviating rule that the decent burial of a citizen's
mortal remains is first in importance, next the marshaling of
his assets for proper distribution, and that these take prefer-
ence even over the lien of a judgment obtained of record
against the decedent in his lifetime. Similarly, public policy

would seem to require them to retain their ancient priority over a lien granted for taxes, at least in the absence of a clear expression of the sovereign will to the contrary.

Nor would it seem material that the 1933 tax became a lien before death, the others after death. For even that lien which pre-existed death is on all fours in that regard with the lien of a judgment obtained of record against the decedent in his lifetime, the which is itself subject to funeral and administration expenses.

In conclusion, it would, therefore, appear that the priorities for payment in the above estate are as follows: (1) funeral expenses, including burial plot and headstone, all concededly proper in amount; (2) executor's commissions and counsel fees, both also conceded as proper in amount, and (3) claim of the United States government for income taxes for the years 1933, 1934, 1935 and 1936.