744 A.2d 1243

F.U.N.B., AS CUSTODIAN FOR NATIONAL TAX FUNDING, L.P., PLAINTIFF, v. RICHARD KIRBY; MRS. RICHARD KIRBY, THE WIFE OF RICHARD KIRBY; THE BOROUGH OF UNION BEACH, A MUNICIPALITY OF THE STATE OF NEW JERSEY, DEFENDANTS.

Superior Court of New Jersey
Chancery Division
Monmouth County

Decided October 27, 1999.

*Allocca & Pellegrino (Jeffrey M. Sponder,* appearing), attorneys for plaintiff.

*Drazin & Warshaw (Ronald Lee Reisner,* appearing), attorneys for defendant Borough of Union Beach.

No other appearances.

FISHER, P.J.Ch.

The present dispute concerns which lien has priority: the tax sale certificate held by plaintiff or the mortgage obtained by defendant Borough of Union Beach ("Union Beach") pursuant to the Affordable Housing Rules. Because the Legislature has not clearly directed that the type of lien possessed by Union Beach should have priority over a tax sale certificate, plaintiff's motion for summary judgment will be granted in this matter of first impression.

The lien held by plaintiff exists by virtue of the Tax Lien Law. Plaintiff's claim to priority is based upon *N.J.S.A.* 54:5-9, which states:

> Every municipal lien shall be a first lien on such land and paramount to all prior or subsequent alienations and descents of such lands or encumbrances thereon, except subsequent municipal liens.

Union Beach's lien has its genesis in the constitutional duty imposed by the Supreme Court's *Mount Laurel* decisions [1] and the Fair Housing Act.[2] In fulfilling that constitutional obligation, a

---

[1] *Southern Burlington County NAACP v. Mount Laurel,* 67 *N.J.* 151, 336 A.2d 713 (1975) (*Mount Laurel I* ) and *Southern Burlington County NAACP v. Mount Laurel,* 92 *N.J.* 158, 456 A.2d 390 (1983) (*Mount Laurel II* ).

[2] *N.J.S.A.* 52:27D–301 to 27D–329.

municipality such as Union Beach may spend funds to rehabilitate substandard housing occupied by low and moderate income qualified families. *N.J.A.C.* 5:93–5.2 and 5:93–5.5. A municipality may, in this regard, also obtain funds from a Regional Contribution Agreement ("RCA") with a "sending" municipality so that the sender gets a credit for satisfying its portion of the regional affordable housing needs. *N.J.A.C.* 5:93–6.5; *N.J.S.A.* 52:27D–312. In this instance, $14,980 worth of repairs was invested in the Kirby home in Union Beach with funds from the Middletown Township RCA program. *Reisner Affidavit,* Exhibit B. With the expenditure of municipal funds for the benefit of the Kirby home, a mortgage and note were executed by the Kirbys to secure repayment to Union Beach. As permitted by the applicable regulations, the mortgage was recorded with the Clerk of Monmouth County. *N.J.A.C.* 5:93–9.3(e). That mortgage, according to the Affordable Housing Rules, has priority over "all mortgages on the property except for a first mortgage placed on the property by the mortgagee prior to the expiration of resale controls." *N.J.A.C.* 5:93–9.3(f).

The question, then, is whether plaintiff is entitled to a priority based upon the Tax Lien Law or whether Union Beach's mortgage takes priority because of the societal importance of *Mount Laurel* housing.[3] Counsels' arguments demonstrate the quandary presented by this matter of first impression. The Tax Lien Law has existed in substantially the same form since 1918 and, thus, long before *Mount Laurel I* and *Mount Laurel II* were even dreamt; the lien held by Union Beach is the product of those far more recent legal events. The clash of these interests has, so far, avoided the attention of the Legislature, leaving this court to ascertain the priority of these liens in the absence of the express direction of our Legislature. The absence of this guidance, however, while daunting, does not permit the avoidance of the issue.

---

[3] Plaintiff's lien was obtained prior in time to Union Beach's. Plaintiff's tax sale certificate was recorded on June 8, 1995 and Union Beach's mortgage was recorded on July 25, 1995.

A case or controversy exists and must be decided notwithstanding it represents a question which falls within the legislative domain but has gone unanswered by that body. The court is therefore left to determine what the Legislature would more than likely have determined on an issue upon which it apparently has given no thought. In other words, it may be that what the court is being asked to do is not so much determine what the Legislature did mean on a point, which was present in its collective mind, but rather to guess what it would have intended on a point not present in its mind if the point had been present.

Accordingly, the court must interpret *N.J.S.A.* 54:5–2 in light of the more recent *Mt. Laurel* jurisprudence. As noted above, *N.J.S.A.* 54:5–9 provides that a lien such as held by plaintiff is "paramount to all prior and subsequent" liens "*except subsequent municipal liens.*" The parties dispute whether Union Beach's subsequent lien is a "municipal lien" within the intent of the Tax Lien Law. *N.J.S.A.* 54:5–2 defines "municipal liens" so as to include "all liens mentioned in this chapter and all existing liens of like character." Union Beach claims its mortgage lien is a "lien of like character" to the tax lien possessed by plaintiff and claims the existence of policy reasons for allowing Union Beach's lien to take priority over plaintiff's.

The court finds the contention that Union Beach's lien is a "lien of like character" to be without merit. That statutory language does not suggest that *any* lien held by a municipality will qualify but rather any lien which is "like" the liens created by the Tax Lien Law. In this regard, the court agrees with the cogent analysis of plaintiff's counsel:

> The mortgage held by Union Beach, on the other hand[,] was not created under the Tax Sale Law, it is not to be paid off through the procedure required under the Tax Sale Law, and it cannot be foreclosed under the procedure outlined under the Tax Sale Law. It is not reasonable, therefore, to suggest that the priority of the mortgage is governed by *N.J.S.A.* 54:5–9 of the Tax Sale Law.

Union Beach's contention that the important policies of the Fair Housing Act will be frustrated by the priority of a tax sale certificate is also found wanting. First, that contention is not even

supported by the Affordable Housing Rules which, as observed above, give priority to a mortgage such as Union Beach's only "over all *mortgages* on the property" except a first mortgage. Certainly, it could have been provided that such a mortgage has priority over "all mortgages and other liens," but there was no attempt in adopting these regulations to provide such a level of priority to this mortgage. *See, e.g., Kessler v. Tarrats,* 194 *N.J.Super.* 136, 476 *A.*2d 326 (App.Div.1984) (where the lien created under the Spill Act was noted to have priority over municipal tax liens).[4] Second, as for the weighing of the importance of the contesting liens in this case, it is observed that such liens were intended to provide benefits to municipalities. So, the suggestion that one lien is to be favored over another in order to benefit a municipality is not immediately apparent. Moreover, the grant of funds for rehabilitation that underlies the lien held by Union Beach is an obligation which is forgiven after the passage of six years. The fact that this lien is one of relatively limited duration fails to compel the conclusion that it should possess priority over a tax sale certificate.

In short, while the Legislature might, upon consideration, view one lien as more worthy of priority than the other, this court, without that guidance, cannot find from a comparison of the authorities provided that the Union Beach mortgage should be given priority in the face of the contrary dictate of the Legislature in *N.J.S.A.* 54:5–9. In other words, until the Legislature should specify a different order of priorities, the court will follow the express language of *N.J.S.A.* 54:5–9 and deem plaintiff's tax sale certificate to have priority over the mortgage held by Union Beach pursuant to the Affordable Housing Rules.

---

[4] That the present situation is quite dissimilar to the situation resolved in *Kessler* is apparent from a consideration of the Spill Act provision itself: "Any expenditures made by the administrator pursuant to this act shall constitute a first priority claim and lien paramount to all other claims and liens upon the revenues and all real and personal property of the discharger, whether or not the discharger is insolvent." *N.J.S.A.* 58:10–23.11f(f).

Accordingly, plaintiff's motion for summary judgment deeming the action uncontested and remanding the matter to the foreclosure unit will be granted.