841 A.2d 943 (2004)
366 N.J. Super. 545
In the Matter of Edith PRYOR, an incapacitated person, now deceased.
Superior Court of New Jersey, Appellate Division.
Submitted December 16, 2003.
Decided February 18, 2004.
*944 Dennis P. Talty, for appellants Township of Moorestown and F. Gerald Caruso (Debra J. Foca, on the brief).
Peter C. Harvey, Attorney General of New Jersey, for respondent State of New Jersey (Patrick DeAlmeida, Deputy Attorney General, of counsel; Marc Krefetz, Deputy Attorney General, on the brief).
Burris & McNeely, for respondent Lori M. McNeely, administratrix for the Estate of Edith Pryor, did not file a brief.
Goldenberg, Mackler, Sayegh, Mintz, Pfeffer, Bonchi & Gill, Atlantic City, and Honig & Greenberg, Voorhees, for amici curiae, New Jersey State League of Municipalities and Tax Collectors and Treasurers Association of New Jersey (Keith A. Bonchi, Atlantic City and Adam D. Greenberg, Voorhees, on the brief).
*945 Before Judges PRESSLER, PARKER and COLEMAN.
The opinion of the court was delivered by PARKER, J.A.D.
In this appeal, we focus on the priority of liens against an insolvent estate. Specifically, we address the conflict between N.J.S.A. 3B:22-2, which establishes priorities for liens against an insolvent estate, and N.J.S.A. 54:5-9, which grants "first lien" status to municipal liens. The Township of Moorestown (Township) and F. Gerald Caruso, purchaser of a Moorestown Tax Sale Certificate on property of the estate, appeal from a judgment of the Chancery Division, Probate Part, declaring the estate insolvent and directing that all creditors be paid on a pro rata basis pursuant to N.J.S.A. 3B:22-2. We reverse the judgment of the trial court and hold that the municipal liens have priority over Medicaid and Public Guardian liens against this estate.
Decedent owned a home located at 145 Holmes Terrace and a one-third interest in a vacant lot at 144 Holmes Terrace.[1] The property taxes on 145 Holmes Terrace were delinquent, and in 1995, Caruso purchased the tax sale certificate and paid the taxes for 1994. The property was sold on March 21, 2002, with the net proceeds totaling $34,345. Caruso claimed that he had invested $16,080.04, plus interest, in the property, and the Township claimed $722.81 in taxes and water and sewer bills.
When Edith Pryor died, she was a ward of the Public Guardian. After her death, Medicaid submitted a notice of lien claim against the estate in the amount of $145,770.36. Other claims against the estate included court-ordered fees to attorneys for administration of the estate and the Public Guardian, bills owed to a convalescent center, two private individuals, two hospitals, a bank, an electric company and an oil company.
The administrator of the estate moved to declare the estate insolvent and to determine the priority of payments to the creditors. Upon finding the estate insolvent, the motion judge ordered the creditors to be paid in accordance with N.J.S.A. 3B:22-2, which provides as follows:
If the applicable assets of the estate are insufficient to pay all claims in full, the personal representative shall make payment in the following order:
a. Reasonable funeral expenses;
b. Costs and expenses of administration;
c. Debts and taxes with preference under Federal Law or the Laws of this State, including debts for the reasonable value of services rendered to the decedent by the Office of the Public Guardian for Elderly Adults;
d. Reasonable medical and hospital expenses of the last illness of the decedent including compensation of persons attending him;
e. Judgments entered against the decedent according to the priorities of their entries respectively;
f. All other claims.
No preference shall be given in the payment of any claim over any other claim of the same class, and a claim due and payable shall not be entitled to a preference over claims not due.
The order, entered on September 24, 2002, directed that various attorneys' fees, totaling $13,605.74, be paid in full from the *946 proceeds of the sale of 145 Holmes Terrace pursuant to paragraph (b) of the statute. The judge found that the tax sale certificate is a lien against the property, rather than against the property owner, and that it is comparable to New Jersey taxes with preferences under paragraph (c). The paragraph (c) claims against the estate were as follows:

 Medicaid $145,770.00
 Caruso 16,080.84
 Public Guardian 7,458.75
 Township of Moorestown 39.89
 Township of Moorestown 682.92

Since the claims under paragraph (c) exceeded the remaining funds in the estate, the judge directed pro rata payment in the following percentages:

 Medicaid 85.7%
 Caruso 9.4%
 Public Guardian 4.4%
 Township of Moorestown 0.5%

All remaining claims allocated to paragraphs (d) through (f) were allowed but not paid because there are no funds remaining in the estate.

I
In this appeal, the Township and Caruso argue that the judge erred in failing to give the municipal tax liens priority over all other liens pursuant to N.J.S.A. 54:5-6[2] and 9.[3]
The New Jersey League of Municipalities and the Tax Collectors and Treasurers Association of New Jersey were granted leave to appear as amici curiae. They argue that municipal tax liens have priority over all other liens against real property and to hold otherwise would contravene public policy.
Respondent, the State of New Jersey, holds the Medicaid lien. The State argues that municipal tax creditors do not have a "super priority" and stand in a similar position to holders of other statutory liens against property, for example, construction liens, formerly known as mechanic's liens. Medicaid is authorized to file a lien against the estate of a deceased recipient pursuant to N.J.S.A. 30:4D-7.2(a). For purposes of a Medicaid lien, the "`estate' includes all real and personal property and other assets included in the recipient's estate." N.J.S.A. 30:4D-7.2(b). A Medicaid lien is a "preferred claim against the recipient's estate and shall have a priority equivalent to that under subsection c. of N.J.S.A. 3B:22-2." N.J.S.A. 30:4D-7.2(d)(2).

II
It is well established that municipal tax liens attach to the land and are not assessed against a property owner. S & R Assoc. v. Lynn Realty Corp., 338 N.J.Super. 350, 769 A.2d 413 (App.Div.2001); Freehold Office Park, Ltd. v. Tp. of Freehold, 12 N.J.Tax 433, 440 (1992) (citing City of Newark v. Central & Lafayette Realty Co., 150 N.J.Super. 18, 374 A.2d 504 (App.Div.), certif. denied, 75 N.J. 528, 384 A.2d 508 (1977)). Property owners have no personal liability for property taxes. Rather, the taxes are assessed against the individual properties and, if unpaid, become liens against the properties. N.J.S.A. 54:5-6.
Taxes are assessed against the property and they become a lien on the property, not a liability of the taxpayer. Since unpaid taxes are a lien against the property *947 and not the personal obligation of the property owner, N.J.S.A. 54:3-27 must mean that the tax revenues due to a municipality may be paid by anyone.
[Freehold, supra, 12 N.J. Tax at 440-41.]
In the event of a default in the payment of property taxes, collection may be enforced by the sale of the tax lien pursuant to N.J.S.A. 54:5-19. When the tax lien is sold to a third party, it is memorialized by a tax sale certificate delivered to the purchaser by the municipality. N.J.S.A. 54:5-46. "A tax sale certificate is not an outright conveyance. It creates ... a lien on the premises and conveys the lien interest of the taxing authority." Savage v. Weissman, 355 N.J.Super. 429, 436, 810 A.2d 1077, 1081 (App.Div.2002). A purchaser of a tax sale certificate from a municipality is entitled to the same rights "as the municipality itself could exercise," including the right to foreclose. Byram Holding Co. v. Bogren, 2 N.J.Super. 331, 334, 63 A.2d 822, 824 (Ch.Div.1949).
"[T]he holder of a tax sale certificate has an inchoate interest [in the property] consisting of three significant rights: [1] the right to receive the sum paid for the certificate with interest at the redemption rate for which the property was sold; [2] the right to redeem from any other holder a subsequently issued tax sale certificate; and ... [3] the right to acquire title by foreclosing after the expiration of two years from the date of sale."
[Simon v. Deptford Tp., 272 N.J.Super. 21, 26, 639 A.2d 328, 330 (App. Div.), certif. denied, 137 N.J. 310, 645 A.2d 139 (1994).]
A tax sale certificate remains a lien against the real property until such time as it is redeemed or foreclosed upon. Savage, supra, 355 N.J.Super. at 436, 810 A.2d at 1081.
Under the common law, the priority of claims against an insolvent estate were as follows: "(1) [f]uneral expenses, assuming they were considered charges against the estate, and not mere debts; (2) administration expenses; (3) taxes." In re Holmes' Estate, 16 N.J. Misc. 402, 403, 1 A.2d 42, 43 (Orphans' Ct. Essex Co.1938). N.J.S.A. 3B:22-2 has maintained the essence of the common law priorities in that paragraphs (a) and (b) accord primary status to funeral and administration expenses. "Debts and taxes with preference under Federal... or State [law], including debts for ... services rendered to the decedent by the... Public Guardian for Elderly Adults" are accorded equal priority under paragraph (c). N.J.S.A. 3B:22-2(c). The Medicaid lien is, of course, a debt under state law by virtue of N.J.S.A. 30:4D-7.2(a); but for the statute authorizing the Medicaid lien, it would have fourth priority status under N.J.S.A. 3B:22-2(d).
The priority of tax liens against an insolvent estate rests upon statute. Holmes' Estate, supra, 16 N.J. Misc. at 404-05, 1 A.2d at 44, citing United States v. Middle States Oil Corp., 18 F.2d 231 (10th Cir.1927). "Municipal liens and the rights arising therefrom, are solely statutory in origin and are fixed and determined by the statute." Dvorkin v. Dover Tp., 29 N.J. 303, 319, 148 A.2d 793, 802 (1959), quoted in Brewer v. Porch, 53 N.J. 167, 173, 249 A.2d 388, 391 (1969).
We reject the State's argument that municipal tax liens do not have a "super priority" over other liens against property on the ground that N.J.S.A. 54:5-9 confers "first lien" status "paramount to all prior or subsequent ... encumbrances... except subsequent municipal liens." The preference accorded the Medicaid lien under paragraph (c) of N.J.S.A. 3B:22-2 does not supercede the statutory *948 "first lien" for municipal taxes.[4] The "super priority" of municipal tax liens is consistent with the public policy of New Jersey to encourage and assist municipalities in the collection of delinquent taxes as expressed in the Tax Sale Law, N.J.S.A. 54:5-1 to 137. Lonsk v. Pennefather, 168 N.J.Super. 178, 182, 402 A.2d 259, 261 (App.Div.1979), certif. denied, 82 N.J. 285, 412 A.2d 792 (1980).

III
Appellants further argue that the trial judge erred in ordering the sale of the real property and distribution of the proceeds without first ordering payment of the municipal tax liens. Municipal liens are continuous on the land and must be paid before the proceeds of sale flow to the owner or other creditors of the property owner.[5]See Brewer, supra, 53 N.J. at 173, 249 A.2d at 391.
Appellants contend that the trial judge exceeded his authority by subordinating the tax sale certificate to other personal debts of the estate. We agree. Caruso was entitled to the sum paid for the certificate, plus interest. There is no statutory provision for partial redemption of a tax sale certificate as was ordered here. Lonsk, supra, 168 N.J.Super. at 182-83, 402 A.2d at 261-62.

IV
We hold that municipal tax liens, including those incorporated in tax sale certificates, have "first lien" status under N.J.S.A. 54:5-9 and shall be paid prior to any other claims against the estate under paragraph (c) of N.J.S.A. 3B:22-2. In an insolvent estate, other paragraph (c) claims shall be paid pro rata after the municipal liens. Accordingly, we reverse the judgment of the Probate Part and vacate that judgment to the extent that it directs the pro rata distribution of proceeds from the sale of 145 Holmes Terrace. We remand to the Probate Part to amend the judgment to give first priority to the municipal lienholder and the holder of the tax sale certificate and to re-distribute the remaining assets among the remaining creditors.
Reversed and remanded.
NOTES
[1] 144 Holmes Terrace was sold pursuant to an order entered on November 5, 2001. The municipal tax lien and tax sale certificate lien were paid from the proceeds of that sale and the remaining proceeds were deposited in the estate.
[2] N.J.S.A. 54:5-6 provides that "[t]axes on lands shall be a continuous lien on the land on which they are assessed and all subsequent taxes, interest, penalties and costs of collection which thereafter fall due or accrue shall be added to and be a part of such initial lien."
[3] N.J.S.A. 54:5-9 provides that "[e]very municipal lien shall be a first lien on such land and paramount to all prior or subsequent alienations and descents of such land or encumbrances thereon, except subsequent municipal liens."
[4] Municipal tax liens even supercede other municipal liens. F.U.N.B v. Kirby, 328 N.J.Super. 161, 164-65, 744 A.2d 1243, 1245-46 (Ch.Div.1999) (holding that a municipal tax sale certificate lienholder had priority over a municipal mortgage lien placed against the property pursuant to the Affordable Housing Rules. N.J.A.C. 5:93-9.3(e) and (f)).
[5] Indeed, if the proceeds from the private sale of the real property, as opposed to a public tax sale, were insufficient to satisfy the municipal tax liens, those tax liens continue against the real property. N.J.S.A. 54:5-6; See Absecon Land Co. v. Keernes, 101 N.J.Eq. 227, 137 A. 429 (1927).