NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3597-23

IN THE MATTER OF G.W.,[1]
an adjudicated incapacitated
person.

_____

APPROVED FOR PUBLICATION

June 17, 2025

APPELLATE DIVISION

Argued March 31, 2025 – Decided June 17, 2025

Before Judges Sabatino, Gummer, and Berdote Byrne.

On appeal from the Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. P-000016-24.

Stephen Slocum, Deputy Attorney General, argued the cause for appellant (Matthew J. Platkin, Attorney General, attorney; Sookie Bae-Park, Assistant Attorney General, of counsel; Stephen Slocum, on the brief).

Maria Fischer argued the cause for respondent (Hinkle Prior & Fischer, attorneys; Maria Fischer, on the brief).

The opinion of the court was delivered by

BERDOTE BYRNE, J.A.D.

---

[1]  We use initials and fictitious names to refer to the parties and other family members pursuant to Rule 1:38-3(e).

In this matter of apparent first impression, we are asked to determine whether a future statutory lien pursuant to N.J.S.A. 30:4D-7.2 ("Medicaid Lien Statute") has priority over an accrued Division of Developmental Disabilities ("DDD") lien pursuant to N.J.S.A. 30:4-80.1 ("DDD Lien Statute"). The effect of that priority would be to bar appellant, DDD, from recovering on its lien against the inherited property of G.W.[2] ("Gabrielle"), an adjudicated incapacitated person. DDD appeals the trial court's orders ruling that its current lien is subordinate to a future Medicaid lien, arguing the trial court's orders must be reversed because the Medicaid Lien Statute and the DDD Lien Statute are not in conflict, a Medicaid lien does not currently exist, and DDD is presently entitled to recover on its existing lien. We agree.

Because the plain language of the Medicaid Lien Statute and the DDD Lien Statute demonstrates DDD is entitled to recover its lien now and the DDD lien is not subordinate to a non-existing Medicaid lien, we vacate the trial court's order finding the future Medicaid lien has priority over the existing DDD lien and remand for an order consistent with this opinion. However, we

_____

[2] On June 6, 2025, the court received a joint letter from counsel advising the court G.W. had died on May 30, 2025. Counsel expressed their belief that the case had not been rendered moot by her death, asserted the issue is one capable of repetition, and indicated their underlying positions had not changed. We have addressed the issue of the trial court's ruling in this opinion. To the extent that circumstances have changed since that ruling, those circumstances may be properly brought before the trial court on remand.

affirm the trial court's appointment of the Arc of Bergen and Passaic Counties ("Arc") as the guardian of Gabrielle's property and order Arc and DDD to engage in the compromise process pursuant to N.J.S.A. 30:4-80.6(c) regarding DDD's lien.

I.

This matter involves Gabrielle, an adult who resides in a group home operated by Arc, where she receives day and residential services. DDD, a division of New Jersey's Department of Human Services ("DHS"), and New Jersey's Medicaid program, implemented through the Division of Medical Assistance and Health Services ("DMAHS"), have jointly provided for Gabrielle's residential services and treatment since June 21, 2012, although not in equal measure.

On December 11, 2019, Gabrielle's sister passed away intestate, leaving Gabrielle to inherit approximately $600,000 from her estate. On September 8, 2020, Gabrielle was declared an adjudicated incapacitated person by court order and the Bureau of Guardianship Services was granted full legal guardianship of her person.

In January 2024, Arc filed a verified complaint, requesting it be appointed the legal guardian of Gabrielle's inherited property and seeking the

transfer and irrevocable assignment of her inherited funds to a pooled special needs trust so Gabrielle could continue to be eligible for Medicaid.

In response, DDD sent a letter to the Clerk of the Superior Court stating DDD "claims a lien pursuant to [N.J.S.A. 30:4-80.1] upon the property, goods, rights, credits, chattels, monies, and effects of [Gabrielle] for the cost of the care and maintenance furnished said individual at said institution."  In the letter, DDD provided notice that "the amount of delinquent maintenance under this lien is $1,052,304.73 as of [February] 7, 2024[,] and will accumulate daily based on current maintenance charges in said institution."

DDD and DMAHS, both represented by the Attorney General, filed a joint response to Arc's complaint.  DMAHS took no position regarding Arc's requested relief.  DDD informed the Bergen County Surrogate "DDD holds a lien against [Gabrielle's] property" and stated its "claim must be addressed before any trust can be established for" Gabrielle.  Arc filed a reply, arguing DMAHS's future Medicaid lien would take priority over the existing DDD lien, precluding DDD from seeking current repayment of its lien, despite DMAHS having taken no position with respect to its potential future lien. Gabrielle's guardian ad litem informed the trial court she believed Arc's position on the matter was in Gabrielle's best interest.

A-3597-23

In a decision placed on the record on June 4, 2024, the trial court found the application for the appointment of a guardian of the property was appropriate as there was clear and convincing evidence Gabrielle was unable to manage any personal or financial affairs, and she could lose her current benefits, including DDD services and her residential care, due to the inheritance. The trial court appointed Arc as the guardian of her property to work with the legal guardian of her person, the Bureau of Guardianship Services.

The trial court also addressed Arc's request to appropriate Gabrielle's inheritance funds to a pooled trust established by Arc. It held the DDD lien would not be recognized at this time because it was subordinate to a future Medicaid lien, and the funds would be transferred irrevocably and assigned to the Arc-pooled trust. Specifically, it correctly found under the applicable statutes "liens are to be against the estate" pursuant to N.J.S.A. 30:4D-7.2, there can be "[n]o [Medicaid] lien against a living person" pursuant to N.J.S.A. 30:4D-7.2, and, in contrast to DMAHS's future interests, DDD's lien was "an immediate one" under N.J.S.A. 30:4-80.1. Nevertheless, the trial court found it did "not make sense" the monies paid by DDD should have to be repaid because of the inheritance and "the monies due to Medicaid, which she is required to be eligible for in order to get those DDD benefits [would] take a

A-3597-23

back seat." It found the result would be inconsistent and posited the better reading of the statutes would be that "Medicaid, which has the primary lien on these monies at the time of an estate cannot . . . be circumvented by the DDD statute or the DDD lien" because "in order to receive DDD benefits one has to have Medicaid eligibility." Moreover, the trial court found it would be "in the best interest of the incapacitated person" to adopt a reading that would not recognize the DDD lien and require the inheritance monies "be turned over to the guardian of the property or of the estate to transfer them irrevocably and assign them to [Arc]," providing no further legal analysis.

On June 4, 2024, the trial court entered a "judgment appointing [Arc] guardian of the estate and approving transfer of funds to a pooled special needs trust." Paragraph twelve of the order directed that Gabrielle's inherited funds "be transferred and irrevocably assigned to The Arc Planning and Guardianship Corporation Pooled Trust, a first party special needs trust, to be held for [Gabrielle's] benefit." The court on July 18, 2024, entered an order "memorializing [its] ruling as to [the] enforceability of [the] DDD lien" and provided a written amplification of its June 4, 2024 oral ruling on January 21, 2025.

This appeal by DDD followed.

A-3597-23

## II.

We review a trial court's interpretation of a statute de novo. Kocanowski v. Township of Bridgewater, 237 N.J. 3, 9 (2019). In our review, we accord no deference to the trial court's legal determinations. See McGovern v. Rutgers, 211 N.J. 94, 108 (2012).

In interpreting a statute, we "aim[] to effectuate the Legislature's intent." In re Proposed Constr. of Compressor Station (CS327), 258 N.J. 312, 324 (2024) (quoting W.S. v. Hildreth, 252 N.J. 506, 518 (2023)). "The '"best indicator" of legislative intent "is the statutory language."'" Ibid. (quoting W.S., 252 N.J. at 518). We "ascribe to the statutory words their ordinary meaning and significance and read them in context with related provisions so as to give sense to the legislation as a whole." Ibid. (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005)). If we determine "the Legislature's intent is clear from the statutory language and its context with related provisions, [then] we apply the law as written." Ibid. (quoting Shelton v. Restaurant.com, Inc., 214 N.J. 419, 429 (2013)).

If the statute is ambiguous, or its "'plain language leads to a result inconsistent with any legitimate public policy objective,'" or the statute "'is at odds with the general statutory scheme,'" then we will "turn to extrinsic tools to determine legislative intent." Id. at 325 (quoting Shelton, 214 N.J. at 429). Nevertheless,

we cannot "rewrite a plainly-written enactment of the Legislature [or] presume that the Legislature intended something other than that expressed by way of the plain language."  Ibid. (alteration in original) (quoting O'Connell v. State, 171 N.J. 484, 488 (2002)).

The federal Medicaid Act, 42 U.S.C. §§ 1396 to 1396w-8, provides federal and state funding for the medical care of those who are unable to afford their medical costs.  See Ark. Dep't of Health & Hum. Servs. v. Ahlborn, 547 U.S. 268, 275 (2006); L.M. v. Div. of Med. Assistance & Health Servs., 140 N.J. 480, 484 (1995).  The Medicaid Act also includes an anti-lien provision, which states: "[n]o lien may be imposed against the property of any individual prior to his [or her] death on account of medical assistance paid or to be paid on his [or her] behalf under the State [Medicaid] plan," apart from limited exceptions not applicable here.  42 U.S.C. § 1396p(a)(1); see also 42 U.S.C. § 1396p(a)(2).

The New Jersey Legislature elected to participate in federal Medicaid funding and adopted the New Jersey Medical Assistance and Health Services Act, N.J.S.A. 30:4D-1 to -19.5, governing its implementation and assuring the State's maximum federal participation in Medicaid funding.  See N.E. v. N.J. Div. of Med. Assistance & Health Servs., 399 N.J. Super. 566, 572 (App. Div. 2008).  "DMAHS is the agency within the DHS that administers the Medicaid

program." In re Est. of Brown, 448 N.J. Super. 252, 257 (App. Div. 2017).  It is "responsible for protecting the interests of the New Jersey Medicaid Program and its beneficiaries." Ibid.  To comply with "federal estate recovery requirements," New Jersey has passed statutes permitting the DHS Commissioner to file Medicaid liens in appropriate cases. Id. at 259; see also N.J.S.A. 30:4D-7, -7.2.

Pursuant to the Medicaid Lien Statute, "[a] lien may be filed against and recovery sought from the estate of a deceased recipient for assistance correctly paid or to be paid on his [or her] behalf for all services received when he [or she] was [sixty-five] years of age or older."  N.J.S.A. 30:4D-7.2(a)(1) (emphasis added).  Any "lien, claim or encumbrance imposed by this act shall be deemed a preferred claim against the recipient's estate and shall have a priority equivalent to" N.J.S.A. 3B:22-2(d).  N.J.S.A. 30:4D-7.2(d)(1); see also In re Pryor, 366 N.J. Super. 545, 553 (App. Div. 2004).

DDD, meanwhile, provides public funding for services, placement in residential facilities, and support for individuals with developmental disabilities.  See In re Civil Commitment of U.C., 423 N.J. Super. 601, 603-04 (App. Div. 2012).  The State bears the cost of institutional care for those individuals who are unable to pay that expense.  See N.J.S.A. 30:4-69. "[U]sing a formula of financial ability to pay," the State must determine

whether the individual with a developmental disability "has sufficient income, assets, resources or estate to pay for the person's maintenance as fixed by the department, or is able to make any payment towards the person's maintenance, or if the person's chargeable relatives or other persons chargeable by contract are able to pay the person's maintenance."  N.J.S.A. 30:4-60(b).  When the costs of institutionalized care are borne by the State, a broad statutory lien attaches to a recipient's property pursuant to the DDD Lien Statute, which provides:

> Every institution or other residential service maintained in whole or in part by State or county funds, which provides inpatient care, supervision and treatment for persons with developmental disabilities, shall have a lien against the property of a person receiving functional services from that institution or service for the total cost of the care and maintenance of the person in the institution at the per capita cost rate of maintenance fixed in accordance with law. The lien shall also attach to the real and personal property of any person chargeable by law with the support and maintenance of the person and against whom a court of competent jurisdiction has entered an order directing the person to pay all or a part of the cost of maintaining the person in an institution, provided that the amount of the lien shall not exceed the amount of maintenance required to be paid by the order of court. . . .  Liens under this section, when properly filed as set forth herein, shall have priority over all unrecorded encumbrances and shall be at the rate to be determined as provided in Title 30 of the Revised Statutes.
>
> [N.J.S.A. 30:4-80.1.]

Importantly, an individual remains "responsible to repay the full cost of care if at some future point the resources become available to do so. For example, [DDD] may seek to recover the full costs of care when an individual comes into an inheritance." N.J.A.C. 10:46D-2.1(f).

Contrary to Arc's argument both before us and the trial court, the Medicaid Lien Statute and the DDD Lien Statute are not inconsistent with one another. The Medicaid Lien Statute is clear that although Medicaid liens are "preferred claim[s] against the recipient's estate" and "have a priority equivalent to" N.J.S.A. 3B:22-2(d), N.J.S.A. 30:4D-7.2(d)(1) (emphasis added), they cannot come into being until the recipient of the funds has passed away, as "[a] lien may be filed against and recovery sought from the estate of a deceased recipient." N.J.S.A. 30:4D-7.2(a)(1) (emphasis added). By its plain language, a Medicaid lien may attach only to the estate of a decedent, not the property of a living person. When both liens exist at the same time, an existing DDD lien cannot take priority over an existing Medicaid lien. However, in a situation such as this one, where no Medicaid lien exists because the recipient is still alive, DDD is entitled to recover on its lien,[3] the only statutorily recognized

---

[3] The guardian of Gabrielle's property is not required to transfer the entire inheritance to DDD in partial satisfaction of the lien; rather, it may engage in the compromise process with DDD pursuant to N.J.S.A. 30:4-80.6(c).

11

lien in existence. Thus, DDD may recover on its lien from Gabrielle's inherited funds before any funds are directed into a pooled trust.

DDD is correct in arguing its lien against Gabrielle's property has already vested and is already due, whereas DMAHS may at some future date have a Medicaid lien on Gabrielle's estate, because the language of both statutes is clear, and we must "ascribe to the statutory words their ordinary meaning and significance and read them in context with related provisions so as to give sense to the legislation as a whole." Compressor Station, 258 N.J. at 324 (quoting DiProspero, 183 N.J. at 492); see also Comm. of Petitioners for Repeal of Ordinance No. 522 (2013) of W. Wildwood v. Frederick, 435 N.J. Super. 552, 567 (App. Div. 2014) ("It is firmly established that '[t]he Legislature is presumed to know the law.'" (alteration in original) (quoting David v. Gov't Emps. Ins. Co., 360 N.J. Super. 127, 143 (App. Div. 2003))); Bd. of Educ. of W. Windsor-Plainsboro Reg'l Sch. Dist. v. Bd. of Educ. of Delran, 361 N.J. Super. 488, 501 (App. Div. 2003).

Finally, we note both Arc and the guardian of Gabrielle's person advocated that the funds be placed in Arc's pooled trust for Gabrielle's benefit and for the benefit of other incapacitated people receiving care from Arc. The trial court found it was in Gabrielle's best interest to direct the inherited funds into Arc's pooled trust. However, a best-interest analysis is not appropriate in

the presence of a specific, legislative mandate that an individual remains "responsible to repay the full cost of care if at some future point the resources become available to do so."  N.J.A.C. 10:46D-2.1(f).  DDD "may seek to recover the full costs of care when an individual comes into an inheritance," ibid., and N.J.S.A. 30:4-80.6(c) sets forth a specific compromise process for doing so without requiring the court's intervention.  Because of this legislative mandate, the trial court had no discretion to perform a best-interest analysis and was constrained to apply the laws as written.

We reverse the trial court's order holding that a future Medicaid lien, which does not currently exist, has priority over the existing DDD lien because that reading is contrary to the plain language of both statutes.  See Shelton, 214 N.J. at 429; Est. of Spill v. Markovitz, 260 N.J. 146, 155 (2025) ("[S]tatutes in pari materia are to be construed together when helpful in resolving doubts or uncertainties and the ascertainment of legislative intent." (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 115 (1997))).  A DDD lien attaches to a living person's assets or a decedent's estate, while a Medicaid lien attaches only to a decedent's estate.  In the event both DMAHS and DDD have liens against a decedent's estate, it is only then that a DDD lien is subordinate to a Medicaid lien.

A-3597-23

We reverse the July 18, 2024 order.  We vacate paragraph twelve of the June 4, 2024 order, remand the case to the trial court, and direct the trial court to enter an amended judgment providing the inherited funds may be transferred to the pooled trust after the resolution of DDD's lien.  We affirm the remainder of the June 4, 2024 order and order the parties to engage in the compromise process pursuant to N.J.S.A. 30:4-80.6(c).

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-3597-23