**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3656-23

IN THE MATTER OF
THE ESTATE OF
FANIA HARTMAN.

_____

Submitted September 23, 2025 – Decided October 20, 2025

Before Judges Sumners and Chase.

On appeal from the Superior Court of New Jersey, Chancery Division, Essex County, Docket No. CP-000125-2022.

Eva Hartman-Drucks, appellant pro se.

Ruth Hartman Tillim, respondent pro se.

PER CURIAM

    Fania Hartman died testate on November 10, 2021. Her June 12, 1986 last will and testament[1] named her two daughters, Eva Hartman-Drucks and Ruth

---

[1] The complete last will and testament was provided at our request. The parties only provided an excerpt of the will in their appendices even though the entire document was subject to the probate proceedings.

Hartman Tillim, as the sole and equal beneficiaries and residuary beneficiaries. The will did not specify the disposition of Fania's[2] remains or how her funeral and related expenses should be paid.

The day before Fania's funeral on November 12, Eva made a 3:00 p.m. appointment at the cemetery to purchase her mother's burial plot.[3] However, Ruth arrived at the cemetery at 1:00 p.m. and video-called Eva to meet with the cemetery salesperson to choose the burial site. The call ended before Ruth signed the burial plot agreement paperwork and made a full payment of $10,625 at 3:41 p.m., before the cemetery's 4:00 p.m. closing. Per the cemetery's requirements, only Ruth as purchaser of Fania's burial plot site, could be listed as the plot's owner. In fact, about three weeks later, the cemetery declined Ruth's request to add Eva as a co-owner of the burial site.

The sisters shared other expenses related to their mother's death. Eva paid $10,000 and Ruth paid $8,934 in funeral home expenses. For the grave monument's fabrication and installation, Eva paid $1,930 and Ruth paid $5,905.80.

---

[2] For convenience and clarity, we refer to Fania and her daughters by their first names because they share a last name. We intend no disrespect.

[3] Due to Fania's Jewish faith, her burial was conducted as soon as possible.

A-3656-23

In observance of Jewish tradition, Fania was eulogized at the unveiling of her headstone.  However, rather than having one unveiling ceremony, Eva and Ruth had separate ceremonies which they each paid for.

Fania's former husband, Roman Hartman, the designated executor under Fania's June 12, 1986 will, filed a verified complaint to probate the will, be appointed as executor, and discharge Eva's claim to probate a later unsigned will.  Roman withdrew his request to be executor and proposed that Samantha Mendenhall, Esq., who had been temporarily appointed estate administrator, serve permanently.  After trial on Eva's claim, the chancery court denied Eva's demand to admit the unsigned will and appointed Mendenhall as permanent Administrator C.T.A. of the estate.

A year later, Mendenhall filed a chancery court complaint seeking the court's advice and direction due to Eva and Ruth's disagreement regarding the estate's reimbursement of the expenses they respectively paid related to their mother's final resting place.  Mendenhall specifically asked the court to determine whether the estate could reimburse Eva for the unveiling ceremony flowers cost and Ruth for the burial plot.

On May 17, 2024, without having argument, the court ordered full reimbursement to Eva for "funeral flowers . . . and memorial service/unveiling

3

ceremony totaling $757.19"[4] and that Ruth should be fully reimbursed for the $10,625 she paid for the burial plot. In its brief statement of reasons, the court rejected Ruth's objection to reimbursing Eva for unveiling service flowers, dismissing Ruth's claim that they "[were] not appropriate at Jewish funerals/memorial services." Although Mendenhall's complaint did not seek direction regarding reimbursement of Eva's payments for the memorial service/unveiling ceremony except for the flowers, the court approved all of Eva's expenses for the unveiling ceremony. The court simply stated,"[t]he court finds [these] reimbursement[s] appropriate and will permit [them]."[5]

The court found no merit in Eva's argument that the estate should not reimburse Ruth for the burial plot because Ruth's purchase solely in her own name violated the will's equal distribution clause and gave Ruth additional property rights. In reimbursing Ruth, the court reasoned:

> The [burial] plot ownership designation was required
> by the cemetery and only one person, [Fania], is
> allowed to occupy the plot.

---

[4] Memorial service/unveiling ceremony expenses included flowers, catering, and rabbinical services.

[5] Although Mendenhall's complaint did not seek direction regarding reimbursement of Eva's payments for the memorial service/unveiling ceremony except for the flowers, Ruth did not file a cross-appeal challenging the court's order requiring repayment of expenses beyond.

. . . .

. . . an email exchange dated December 3, 2021, between Ruth and a cemetery representative, establishes that Ruth sought to have the Bill of Sale placed in the names of Ruth and Eva. The response from the cemetery representative was that "in accordance with cemetery policy and procedures[,] the purchase of . . . single [burial plots] can only be placed in one name." Ruth was the purchaser of record. Only one person, [Fania], is permitted to occupy the plot. Under these facts, the court finds reimbursement appropriate.

The court did not cite any case law, regulations, or statutes to support its decision. The court's order did not decide whether the estate should reimburse Ruth for the $5,905.80 she spent on the grave monument or the $229.88 she spent on the November 2022 unveiling ceremony. Mendenhall's complaint did not seek direction regarding reimbursement for these expenses.

In her appeal, Eva argues:

POINT I

THE TRIAL COURT JUDGE ERRED AND ABUSED HER DISCRETION WHEN SHE FAILED TO CONSIDER THAT RUTH IS THE SOLE OWNER OF THE PROPERTY HENCE SHOULD NOT BE REIMBURSED, AS IT VIOLATES THE CONDITIONS OF THE DECEDENT'S WILL, THE GOVERNING ESTATE DOCUMENT.

5

POINT II

THE TRIAL COURT JUDGE ERRED WHEN SHE
FAILED TO APPLY EQUITY IN THE CASE.

POINT III

THE TRIAL COURT JUDGE ERRED WHEN SHE
FAILED TO CONSIDER RUTH'S ADVERSE
CONDUCT.

Having reviewed the record, the applicable law, and the parties' arguments, we conclude there is no merit to Eva's appeal.

We initially point out that the chancery court's statement of reasons does not fully comply with Rule 1:7-4's requirement to issue findings of fact and conclusions of law.[6] Nevertheless, remand is unnecessary because the record is sufficient for us to decide the appropriateness of the burial plot reimbursement. See Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 1:7-4 (2026) (citing Leeds v. Chase Manhattan Bank, N.A., 331 N.J. Super. 416, 420-21 (App. Div. 2000) (affirming the grant of summary judgment even though the order merely stated "denied")).

---

[6] The court's order and statement of reasons addressed more than the two issues —reimbursement of the unveiling ceremony flowers cost to Eva and the burial plot to Ruth—raised in the complaint; however, these are not issues on appeal.

Eva's claim that Fania's will precludes Ruth from being reimbursed by Fania's estate for the burial plot's cost because Ruth is the sole owner of the burial plot is without merit. Ruth was entitled to be reimbursed by the estate for the burial plot cost because the expense was "reasonable and necessary . . . [for] providing an appropriate funeral for [their mother]." Donato v. Mason, 117 N.J. Super. 1, 3-4 (App. Div. 1971) (citing Quinn v. Koeck, 95 N.J. Super. 467, 470 (App. Div. 1967)); see also In re Holmes' Est., 16 N.J. Misc. 402, 406 (Orphans' Ct. 1938) (holding "[f]uneral expenses, including burial plot and headstone" were priorities for payment from the estate). "[T]he law implies a promise on the part of the [estate] to pay the reasonable expenses of the interment." Quinn, 95 N.J. Super. at 470; see also N.J.S.A. 3B:22-2 (providing that reasonable funeral expenses have priority over all other claims when assets of the estate are insufficient). Eva made no claim before the court that the expense was unreasonable.

Because funeral expenses are not considered debts of the deceased but rather charges against the estate, the estate's obligation to reimburse Ruth is not affected by the will. See generally Young v. Conover, 120 N.J.L. 267, 270 (Sup. Ct. 1938) (holding funeral expenses incurred by the son of the deceased were "liabilities of his estate" not debts and therefore not barred by the statute of

7

limitations).  The will is silent regarding payment of Fania's burial and funeral expenses and does not prevent reimbursement to Ruth.

The estate cannot avoid its obligation to reimburse Ruth because she is the sole owner of the burial plot.  Although Ruth can transfer the burial site under N.J.S.A. 45:27-28, transfers are restricted once remains have been interred, and her heirs will inherit the site. [7]

There is no merit to Eva's argument that the chancery court abused its discretion in not applying principles of equity to deny Ruth's reimbursement for the burial plot due to Ruth's conduct.  Eva maintains Ruth should be denied reimbursement because Ruth:  (1) showed up to the cemetery before Eva's scheduled appointment; (2) used her power as sole owner of the burial site to change the agreed upon inscription on the grave monument; (3) kept the date that the grave monument was placed on the grave a secret and excluded Eva

---

[7] N.J.S.A. 45:27-28(c) provides that after human remains are in the grave it can only be transferred by specific devise in a will and not by a residuary clause or general reference to real property.  It lists the order that the grave would be inherited in the absence of a will.  N.J.S.A. 45:27-28(c).  It also allows ownership of the grave to be transferred to "any heir at law of the person buried in the space," N.J.S.A. 45:27-28(f)(3), and allows for it to be conveyed in trust to a bank, trust company or the cemetery, N.J.S.A. 45:27-28(f)(4).

from the unveiling ceremony; and (4) refused to provide Eva with a permit for the installation of the grave monument.

The court noted that Ruth attempted to add Eva as a co-owner of the burial plot but was prevented by cemetery policy. It also acknowledged the burial plot was a single plot already occupied by their mother, finding minimal benefit to Ruth in sole ownership. Eva makes no reasonable argument that Ruth's ownership unfairly denies her any right that she was entitled to. She cites no factual or legal support that Ruth's actions in purchasing the burial plot preclude Ruth from being reimbursed for the purchase.

Lastly, Eva's argument that the doctrine of unclean hands precludes Ruth from reimbursement is not supported by the law. The doctrine is "applied against a person bringing a claim in equity to bar 'the special remedies of equity.'" Capparelli v. Lopatin, 459 N.J. Super. 584, 612 (App. Div. 2019) (quoting Merchs. Indem. Corp. v. Eggleston, 37 N.J. 114, 132 (1962)). Since reimbursement was required by law, not equity, Eva's invocation of unclean hands is inapplicable. The doctrine does not aid Eva, as she seeks an equitable remedy to deny Ruth a lawful reimbursement. See ibid.

A-3656-23

For these reasons, there is no basis to disturb the chancery court's order. Any arguments raised by Eva that are not addressed lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-3656-23