194 N.J. Super. 136 (1984)
476 A.2d 326
SHELDON KESSLER, PLAINTIFF-APPELLANT,
v.
DANIEL TARRATS; BARONE BARREL & DRUM CO., A PROPRIETORSHIP; BARONE HAZARDOUS WASTE MANAGEMENT CORP., A N.J. CORP.; CARSHEL REALTY COMPANY, A PARTNERSHIP; FOAM CRAFT CORP., A N.J. CORP.; IRWIN, POST & ROSEN, P.A.; EMPLOYERS INSURANCE OF WASSAU, DEFENDANTS, AND CITY OF PATERSON, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY; STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted April 30, 1984.
Decided June 1, 1984.
*139 Before Judges BISCHOFF, PETRELLA and BRODY.
Grabow, Verp & Leddy, attorneys for appellant (Richard J. Savino on the brief).
Ralph L. DeLuccia, Jr., Corporation Counsel, attorney for respondent, City of Paterson (Julie M. Romaniw, Assistant Corporation Counsel, on the letter brief).
*140 Irwin I. Kimmelman, Attorney General of New Jersey, attorney for respondent, State of New Jersey (Deborah T. Poritz, Deputy Attorney General, of counsel; Howard B. Epstein, Deputy Attorney General, on the brief).
No other briefs were filed.
The opinion of the court was delivered by PETRELLA, J.A.D.
The trial court held that the Spill Act gave the State of New Jersey a paramount lien over the City of Paterson's preexisting tax lien and the interests of the assignee of a mortgage in Kessler v. Tarrats, 191 N.J. Super. 273 (Ch.Div. 1983). Paterson and the holder of the mortgage appeal. We affirm.
On December 21, 1976 Carshel Realty, a partnership owned by Sheldon Kessler and his wife, bought the premises at 190  16th Avenue, Paterson, New Jersey from 190  16th Avenue Corporation (hereinafter 190 Corp.) and executed a note and a mortgage to 190 Corp.[1] On February 22, 1977 Carshel conveyed the premises to Foam Craft which assumed the mortgage owed to 190 Corp.
On November 9, 1979 Employers Insurance of Wassau obtained a judgment against Foam Craft, and obtained a lien on the subject property. On December 1, 1979 Foam Craft conveyed the premises (subject to the 1976 mortgage to 190 Corp.) to Daniel Tarrats who operated Barone Barrel and Drum Company on the premises. Contemporaneously, Tarrats executed a $27,000 mortgage to Foam Craft. On June 17, 1980 Tarrats executed a $7,000 mortgage to Irving Savings and Loan, which mortgage has apparently been satisfied.
*141 On January 23, 1980 the Spill Fund lien provision was signed into law. Under N.J.S.A. 58:10-23.11f(f) the State was given a priority lien in all cases where the administrator of the Spill Fund is required to clean up a site pursuant to this act.
On October 31, 1980 the Paterson Tax Collector sold the tax certificate and recorded the City's lien for the unpaid taxes of $2,874.86 which accrued in 1979. On December 31, 1981 Tarrats gave a mortgage for $25,000 to Irwin, Post & Rosen, P.A., a law firm which represented Tarrats, and which did not participate in this appeal or the underlying action.
In October 1981 the State of New Jersey and the City of Paterson learned that the premises were being used for the illegal storage of toxic chemicals. The State of New Jersey Department of Environmental Protection (DEP) negotiated with Tarrats regarding cleaning up the toxic chemicals. On October 26, 1981 Tarrats entered into a consent order with the DEP in which he undertook to clean up the property. Upon Tarrats' default under the consent order, the DEP obtained an order on January 5, 1982 which permitted it to clean up the site. The DEP expended $274,581.43 in performing that task. The City of Paterson also expended a considerable, but unstated amount, in providing municipal employees to assist in the clean-up, most notably Paterson police officers and firemen.
On April 13, 1982, 190 Corp. assigned the note and mortgage to Sheldon Kessler, a partner in Carshel Realty which originally had given the 1976 mortgage. At the time Tarrats held fee title to the premises. On May 7, 1982 the State filed a certification of expenditures with the court representing the cost of the clean-up. On May 25, 1982 Kessler filed a complaint to foreclose on the property. On July 27, 1982 the State filed its lien pursuant to the Spill Act.
After Sheldon Kessler filed his foreclosure complaint, the City of Paterson filed an answer and cross-claim asserting its statutory lien for unpaid taxes, and the State of New Jersey filed an answer, cross-claim and counterclaim to enforce the lien *142 of the administrator of the New Jersey Spill Compensation Fund, entered pursuant to N.J.S.A. 58:10-23.11f(f). The administrator filed a motion for summary judgment, seeking an adjudication that its lien was paramount to all others.
The trial judge held that the Spill Fund created a paramount lien in the State which took priority over Paterson's lien and the lien of the mortgage now held by Kessler under the assignment.
The issues on this appeal relate primarily to the priority of the liens. Kessler also argues that his rights relate back in time to when 190 Corp. took the mortgage because he has since assumed 190 Corp.'s rights and obligations. Moreover, Kessler argues that the Spill Act is an unconstitutional impairment of contract and constitutes a taking of his property without just compensation. The DEP responds that Kessler's rights arose after the enactment of the priority lien law and that the Spill Act is a valid exercise of the police power. The City of Paterson argues that its lien arose before the enactment of the Spill Act lien provision, and because its lien was perfected first, it therefore has priority.
The Spill Act was enacted in 1976. The lien provision at issue herein, N.J.S.A. 58:10-23.11f(f), was enacted in L. 1979, c. 346, and became effective on January 23, 1980. The lien provision provides:
Any expenditures made by the administrator pursuant to this act shall constitute a first priority claim and lien paramount to all other claims and liens upon the revenues and all real and personal property of the discharger, whether or not the discharger is insolvent. (Emphasis added.)
Since the trial court's decision in this case, the New Jersey Supreme Court has held that the Spill Act has retroactive application. In State, Dept. of Environ. Protect. v. Ventron Corp., 94 N.J. 473, 498 (1983), the court held that the Legislature intended the Spill Act to have retroactive application, and thus held defendants strictly liable for their violations even though the acts constituting the violations took place prior to the enactment of the Spill Act. Id. at 486-487. The specific *143 holding in Ventron did not address all aspects of the Spill Act, but we find the analysis used in finding the strict liability provision retroactive to be equally applicable to the lien provision. In Ventron, Justice Pollack wrote:
When considering whether a statute should be applied prospectively or retroactively, our quest is to ascertain the intention of the Legislature. In the absence of an express declaration to the contrary, that search may lead to the conclusion that a statute should be given only prospective effect. Rothman v. Rothman, 65 N.J. 219, 224 (1974). Conversely, when the Legislature has clearly indicated that a statute should be given retroactive effect, the courts will give it that effect unless it will violate the constitution or result in a manifest injustice. Baldwin v. Newark, 38 N.J.L. 158, 159 (Sup.Ct. 1895); see Gibbons v. Gibbons, 86 N.J. 515, 522-23 (1981); Howard Savings Inst. v. Kielb, 38 N.J. 186, 193 (1962). As noted, the Legislature has expressly declared that the Spill Act should be given retroactive effect.
Retroactivity need not render a statute unconstitutional, Rothman v. Rothman, 65 N.J. at 225 and the Spill Act, not being a criminal provision, is not invalid as an ex post facto law. Furthermore, the due process clause generally does not prohibit retroactive civil legislation unless the consequences are particularly harsh and oppressive. United States Trust Co. v. New Jersey, 431 U.S. 1, 19 n. 13, 97 S.Ct. 1505, 1516 n. 13, 52 L.Ed.2d 92, 106 n. 13 (1977). In the exercise of the police power, a state may enact a statute to promote public health, safety or the general welfare. Rothman v. Rothman, 65 N.J. at 225 Although retroactive application of a statute may impair private property rights, when protection of the public interest so clearly predominates over that impairment, the statute is valid. Id. In this case, we find that the public interest outweighs any impairment of private property rights. [Id. at 498-499].
Our holding that the Spill Act lien provision is retroactive necessarily rejects the City of Paterson's claim that its lien is paramount. Under N.J.S.A. 54:5-9, the municipality generally has a priority lien over all prior and any subsequent State encumbrances. Irvington v. Ollemar, 128 N.J. Eq. 402, 409 (Ch. 1940). However, that priority is limited by the lien authorized by the subsequent enactment of the Spill Act.
Although the Spill Act lien is paramount to the priority lien of the City, it is nonetheless clear that a municipality has no claim under the Constitution against the State. Trenton v. New Jersey, 262 U.S. 182, 187, 43 S.Ct. 534, 536, 67 L.Ed. 937, 941 (1922). The municipality has no rights against the State based on impairment of its statutory lien. As was stated in Trenton, supra:

*144 In New Jersey it has been held that, within the limits prescribed by the state Constitution, the legislature may delegate to municipalities such portion of political power as they may deem expedient, withholding other powers, and may withdraw any part of that which has been delegated. Van Cleve v. Passaic Valley Sewerage Comrs, 71 N.J.L. 183, 198, 58 [A.] 571.
In the absence of state constitutional provisions safeguarding it to them, municipalities have no inherent right of self-government which is beyond the legislative control of the state. A municipality is merely a department of the state, and the state may withhold, grant, or withdraw powers and privileges, as it sees fit. However great or small its sphere of action, it remains the creature of the state, exercising and holding powers and privileges subject to the sovereign will. See Barnes v. District of Columbia, 91 U.S. 540, 544, 545, 23 L.Ed. 440, 441. [262 U.S. at 187, 43 S.Ct. at 536 (footnotes omitted)].
Moreover, the Spill Act itself provides for some measure of compensation to the municipality for certain tax revenues lost when the DEP undertakes to clean up. N.J.S.A. 58:10-23.11g provides in pertinent part:
a. The fund shall be strictly liable, without regard to fault, for all cleanup and removal costs and for all direct and indirect damages no matter by whom sustained, including but not limited to:
* * * * * * * *
(4) Loss of tax revenue by the State or local governments for a period of 1 year due to damage to real or personal property proximately resulting from a discharge; ....
This provision evidences a legislative intent to limit the municipal tax lien on the one hand, but also to afford some reimbursement for the necessary impairment of municipal tax revenues. Hence, we reject the City of Paterson's assertion of priority.
Kessler claims that the Spill Act lien is an unconstitutional impairment of his contract and a taking without just compensation.[2]
The activity of the State was proper under the police power, which power may subordinate a private property owner's *145 rights in his property. In Penna-Reading Seashore Lines v. Bd. Pub. Utility Com., 13 N.J. Super. 540, 545 (App.Div. 1951), aff'd 8 N.J. 85 (1951), we said:
And as all property, whether owned by private persons or by corporations, is held subject to the authority of the State to regulate its use in such manner as not to unnecessarily endanger the lives and personal safety of the people, it is not a condition of the exercise of that authority that the State shall indemnify the owners of property for the damage or injury resulting from its exercise. Property thus damaged or injured is not, within the meaning of the Constitution, taken for public use, nor is the owner deprived of it without due process of law. The requirement that compensation be made for private property taken for public use imposes no restriction upon the inherent powers of the State by reasonable regulations to protect the lives and secure the safety of the people.
Although the Contract Clause on its face prohibits the adoption of any law impairing the obligation of contracts, the Clause is not an absolute and is not to be read "with literal exactness like a mathematical formula." United States Trust Co. v. New Jersey, 431 U.S. 1, 21, 97 S.Ct. 1505, 1517, 52 L.Ed.2d 92 (1977). See City of El Paso v. Simmons, 379 U.S. 497, 508, 85 S.Ct. 577, 583, 13 L.Ed.2d 466 (1965); Home Building & Loan Assoc. v. Blaisdell, 290 U.S. 398, 548 S.Ct. 231, 78 L.Ed. 413 (1934); Albigese v. City of Jersey City, 127 N.J. Super. 101, 112 (Law Div. 1974), mod. on other grounds 129 N.J. Super. 567 (App.Div. 1974).
A reviewing court must balance the prohibitions of the contract clause against the authority of the police power which requires the State to safeguard the vital interests of its citizens. Home Building & Loan Assoc. v. Blaisdell, supra (290 U.S. at 435-436, 54 S.Ct. at 239); Veix v. Sixth Ward Assn., 310 U.S. 32, 38, 60 S.Ct. 792, 794, 84 L.Ed. 1061 (1940). As the Court noted in Allied Structural Steel Co. v. Spannaus, 438 U.S. 234, 241, 98 S.Ct. 2716, 57 L.Ed.2d 272 (1978): "First of all, it is to be accepted as commonplace that the Contract Clause does not operate to obliterate the police power of the States." Accord, Fidelity Union Trust Co. v. N.J. Highway Auth., 85 N.J. 277, 286-287 (1981), app. dism. 454 U.S. 804, 102 S.Ct. 76, 70 L.Ed.2d 73 (1981). Police power enactments, such as the priority lien provision at issue here, will be *146 upheld despite Contract Clause challenges so long as the "statutes exercising those police powers serve a legitimate public purpose and the adjustment of the private parties' duties and obligations is on reasonable terms and conditions." Id. at 287. See also Home Building & Loan Assoc. v. Blaisdell, supra (290 U.S. at 434-436, 54 S.Ct. at 238-239).
The Spill Act's priority lien provision serves the legitimate public purpose of enhancing the Spill Fund's remedial capabilities by increasing the opportunities to recoup clean up expenditures. Even if the application of that priority lien provision results in some impairment of contract, it may nevertheless be permitted because of the strong police power and public interest rationale underlying the enactment. Hence, we conclude that if any impairment of contract did occur in this case, such an impairment was permissible under the police powers.
Finally, Kessler argues that imposition of the Spill Act lien effectively constitutes a taking without just compensation. We disagree. As was stated in Washington Market Enterprises v. Trenton, 68 N.J. 107, 116 (1975):
The general question as to when governmental action amounts to a taking of property has always presented a vexing and thorny problem. If there has been a taking, both Federal and State Constitutions require the payment of compensation: U.S. Const. amend. V; N.J. Const. art. 1, ¶ 20. If there has not been a taking, any loss that may have been suffered is damnum absque injuria; there has been a noncompensable governmental exercise of the police power. [Footnotes omitted.]
In American Dredging Co. v. State, 161 N.J. Super. 504, 507 (Ch.Div. 1978), aff'd 169 N.J. Super. 18 (1978), it was observed that "we must distinguish between a taking in the Constitutional sense for governmental use, for which compensation is compelled, and restrictions imposed on the use of land through governmental exercise of police power, for which no compensation is mandated."
The State's involvement with this property began because of the contamination of the premises with hazardous *147 substances. We cannot in this discussion overlook the negative impact on property values by the presence of toxic wastes; the unquestioned authority of the State to require abatement of a health nuisance, and the ability of government to close down a property or facility which creates a public health menace. See Paterson v. Fargo Realty, Inc., 174 N.J. Super. 178, 183 (Cty.D. Ct. 1980). The illegal dischargers are responsible for the physical damage to the property and any corresponding diminution in market value thereof. Whatever diminution in value may have occurred to affect plaintiff's security interest was as the result of the acts of polluting the property. Therefore, whatever property, if any, was "taken" was taken by the dischargers of the hazardous substances and not by the State. The State funded the cleanup of the property only after the owner was notified of the dangers and failed to take remedial action. The State's action (far from reducing the value of the property, which for the most part would be without real value in its contaminated or polluted condition with a highly doubtful marketability) would in the usual course enhance value by removing the deleterious substances. The State did not take property, but rather assisted in its enhancement by doing what the owners should have done but did not do. There thus exists a right of reimbursement. 7 McQuillian, Municipal Corporations (3d 1968) § 24.561 at 596; Paterson v. Fargo Realty, Inc., supra (174 N.J. Super. at 185). Such action inured to the benefit not only of the owner, but all existing lienholders. Hence, the State's priority lien status is warranted.
It cannot be disputed that the State had the authority to clean up this property upon the failure of those responsible to do so. Nor can it be seriously argued that the State "took" the property in the condemnation sense. Thus, Kessler's constitutional claims are without merit.
We affirm the trial court's holding that N.J.S.A. 58:10-23.11f(f) grants the State a paramount lien over the City of Paterson and Kessler.
*148 In view of our disposition of this appeal, we need not address the other grounds discussed by the trial judge (some of which were not raised on appeal) in sustaining the priority of the Spill Fund Act lien, and we express no opinion thereon.
Affirmed.
NOTES
[1] The mortgage was for $38,000 with interest at 8%. It was payable in monthly installments and was to be paid off on or before December 21, 1983. No mortgage payments were made after July 21, 1981. As of the date of filing the foreclosure complaint by plaintiff on May 25, 1982, there was due on the note and mortgage $18,900.38, together with 8% interest from August 21, 1981.
[2] On appeal Kessler raises various issues as to when his interest in the subject property arose. Because we hold that the Spill Act lien is retroactive in application, we find it unnecessary to pinpoint the exact moment in time when Kessler's rights arose.