894 A.2d 1215

CASINO REINVESTMENT DEVELOPMENT AUTHORITY, PLAIN-TIFF–APPELLANT, v. JAMES H. TELLER, SR., AND MARY E. TELLER, HUSBAND AND WIFE; ANCHOR SAVINGS AND LOAN ASSOCIATION; BENEFICIAL SAVINGS BANK; SECURITY SAVINGS AND LOAN ASSOCIATION; QUANDA MITCHELL PRICE; NATIONAL COMMUNITY BANK OF NEW JERSEY; NATIONAL WESTMINSTER BANK NJ T/A FIRST JERSEY NATIONAL BANK SOUTH; ACTION SAVINGS BANK S.L.A.; LANETTA WAYS; POMONA OIL COMPANY; BENEFICIAL NEW JERSEY, INC.; STATE OF NEW JERSEY; ATLANTIC CITY ELECTRIC COMPANY EMPLOYEE FEDERAL CREDIT UNION; CAPE ATLANTIC MRI; CELLULAR PHONE OF NEW JERSEY; BRIAN THOMAS, TRUSTEE; ATLANTIC CITY MUNICIPAL UTILITIES AUTHORITY; AND ATLANTIC CITY SEWERAGE COMPANY, DEFENDANTS, AND CITY OF ATLANTIC CITY, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued February 6, 2006—Decided April 10, 2006.

Before Judges LINTNER, PARRILLO and GILROY.

*Renee A. Rubino,* argued the cause for appellant (*Scarinci & Hollenbeck, LLC,* attorneys; *Renee A. Rubino,* of counsel and on the brief).

*Kimberly O'Brien–Baldwin,* Assistant City Solicitor, argued the cause for respondent City of Atlantic City (*Beverly Graham Foy, City Solicitor,* attorney; *Marcia Allen Phillips,* Assistant City Solicitor, on the brief).

The opinion of the court was delivered by

GILROY, J.S.C. (temporarily assigned).

This is a condemnation action. Plaintiff, Casino Reinvestment Development Authority (CRDA), appeals from the order of the Law Division entered on February 22, 2005, denying its motion to vacate an order of August 27, 2004, granting defendant, City of Atlantic City's (City), motion to withdraw funds previously deposited into court by CRDA on filing of a declaration of taking during the pendency of the condemnation proceeding. The issue presented is whether in the case of environmentally contaminated property, a municipal tax lien attaches to funds held in court for the purpose of paying remediation costs of the condemnor. Because we conclude that remediation costs are a transactional part of the calculation of the value of the property, and that creditors' interests transfer from the res to the surplus on deposit after recoupment of remediation costs by the condemnor, we reverse and remand.

We briefly state the procedural history and uncontested facts. CRDA, a financing and investment agency established pursuant to *N.J.S.A.* 5:12–153 to –183, is authorized to exercise the right of eminent domain within the City. *N.J.S.A.* 5:12–161p. On July 14, 2000, CRDA filed a verified complaint seeking to acquire a fee interest in property located at 615 North Carolina Avenue, Atlantic City (the "Property"), as part of the North Carolina Avenue Widening Project. Count Two of the complaint sought a declaration that "defendants, James H. Teller, Sr., and Mary E. Teller [owners of the Property] are legally responsible to CRDA for all reasonable and necessary costs that may arise from or relate to remediation of any discharge of a hazardous substance existing on the Property as of the date of the filing of this Complaint." The complaint stated that the Property was appraised at $55,200, as if "unaffected by adverse environmental conditions," and the "estimated cost of cleaning the adverse environmental conditions is approximately $130,000[] to $200,000[]."

On September 15, 2000, Judge Winkelstein entered an "order for payment into court, for the vesting of title, and for possession." The order provided:

The [$55,200] being deposited with the Clerk of the Superior Court represents the fair market value of the [P]roperty as if unaffected by contamination as estimated by CRDA. The estimated cost of cleaning the contamination on the [P]roperty is $130,000.00 to $200,000.00. The estimated fair market value of the [P]roperty is therefore $1.00.

The order further provided that "[t]he full amount deposited by CRDA shall remain on deposit until a final resolution of Count Two of the Verified Complaint." On October 10, 2000, CRDA filed a Declaration of Taking, and on October 12, 2000, it deposited $55,200 into court. On March 1, 2001, a Report of Commissioners was filed, determining that the fair market value of the Property was $55,200. No appeal was taken from the Report of Commissioners.

On August 2, 2004, the City filed a motion to withdraw $39,098.75 from the funds in court contending that "as of October 5, 2000, the date of taking, there was due to ... the City ... the sum of $39,098.75 for unpaid liens and interest on [the Property]." CRDA was not noticed on the motion. Because the motion was unopposed, on August 27, 2004, a second Law Division judge entered an order granting the City's motion, leaving a balance on deposit of $16,101.25. Having completed the environmental cleanup with remediation costs totaling $257,834.56, CRDA filed a motion to withdraw the original deposit of $55,200, together with interest accrued thereon, on October 27, 2004. Learning of the City's withdrawal, CRDA filed a motion to vacate the order of August 27, 2004, authorizing the City's withdrawal of funds, and to compel redeposit of the funds into court. Both of the motions were carried to February 18, 2005. After oral argument, the motion judge, concluding that "municipal tax liens take priority over the CRDA's cleanup costs of the contaminated property," denied the motion to vacate the order of August 27, 2004, and to compel the City to redeposit funds into court, and directed that CRDA "shall be permitted to withdraw the balance of the funds remaining in the Trust Fund." A confirmatory order was entered on February 22, 2005.

On appeal, CRDA argues that the motion judge erred "addressing this matter as an issue of lien priority on the funds in court ... because, in the special case of contaminated property, the funds in court are not money to which the condemnee is necessarily entitled." CRDA contends that when the "condemning authority deposits the full 'as if remediated' value of the property into court ... no one expects that the condemnee will receive the entire amount ... [because] under this approach[,] a 'portion of the award sufficient to cover cleanup costs is escrowed or held in trust until the exact amount of cleanup costs are determined.'" (quoting *Housing Auth. of City of New Brunswick v. Suydam Investors, LLC*, 177 *N.J.* 2, 25, 826 *A.2d* 673 (2003) (*Suydam*)). The City counters that it has a first priority tax lien on the Property (and therefore on the monies on deposit) which is superior to CRDA's claim to cleanup costs.

■ CRDA's motion to vacate, which sought entry of an order compelling redeposit of funds and granting the previously filed motion to withdraw, requested reconsideration of the matter on its merits. Accordingly, the motion is "characterizable as a motion to alter or amend" the prior order under *Rule* 4:49–2. Pressler, *Current N.J. Court Rules*, comment on *R.* 4:49–2 (2006). Reconsideration under *Rule* 4:49–2 is a matter within the sound discretion of the court and is to be exercised "for good cause shown and in the service of the ultimate goal of substantial justice." *Johnson v. Cyklop Strapping Corp.*, 220 *N.J.Super.* 250, 264, 531 *A.2d* 1078 (App.Div.1987), *certif. denied*, 110 *N.J.* 196, 540 *A.2d* 189 (1988). This court may only disturb the decision below if it finds error which is "clearly capable of producing an unjust result." *R.* 2:10–2. However, the trial court's interpretation of the law is afforded no special deference, and this court's review of the legal issues is de novo. *Manalapan Realty, L.P. v. Tp. Comm. of Manalapan*, 140 *N.J.* 366, 378, 658 *A.2d* 1230 (1995).

■ The City argues that the issue is one of priority between two lien claimants and that it has the right to first satisfaction of its tax lien. We disagree. A municipal tax lien has "first lien"

priority status over all other liens against property, except subsequent municipal liens. *N.J.S.A.* 54:5–9; *In re Pryor,* 366 *N.J.Super.* 545, 553, 841 *A.2d* 943 (App.Div.), *certif. denied,* 181 *N.J.* 545, 859 *A.2d* 690 (2004); *Byram Holding Co. v. Bogren,* 2 *N.J.Super.* 331, 63 *A.2d* 822 (Ch.Div.1949). The significance of this "super priority" is underpinned by the fact that "[l]ocal property taxes are the primary source of revenue for [municipalities] ... [and] [e]ach parcel of land in the [municipality] must bear its fair share of the tax burden." *Renaissance Plaza Assocs. v. City of Atlantic City,* 18 *N.J. Tax* 342, 352 (1998). Generally, in a condemnation proceeding, a lien for unpaid taxes due as of the date of the deposit of funds with the court attaches to the condemnation award as an interest in the res, and is payable from such funds. *City of Orange v. Wall Day Realty Co.,* 150 *N.J.Super.* 1, 3, 374 *A.2d* 496 (App.Div.1977); *see also Jersey City Redevelopment Agency v. Costello,* 252 *N.J.Super.* 247, 259, 599 *A.2d* 899 (App. Div.), *certif. denied,* 126 *N.J.* 332, 598 *A.2d* 890 (1991).

Some statutes, like general rules, have exceptions. If the cleanup costs had been expended from the Spill Fund, the municipal tax lien would become subordinate to that of the State in "all cases where the administrator of the Spill Fund is required to clean up a site pursuant to [the Spill Act]." *Kessler v. Tarrats,* 194 *N.J.Super.* 136, 141, 476 *A.2d* 326 (App.Div.1984). "Any expenditures made by the administrator pursuant to this Act shall constitute a first priority claim and lien paramount to all claims and liens upon the revenues and all real and personal property of the discharger, whether or not the discharger is insolvent." *Id.* at 142, 476 *A.2d* 326; *see also N.J.S.A.* 58:10–23.11f(f).

■ Here, however, CRDA is not asserting a lien under the Spill Compensation and Control Act (the Spill Act), *N.J.S.A.* 58:10–23.11 to –23.11z. A Spill Act lien is only created where the cleanup was performed pursuant to the Spill Act, and the costs of remediation must first be spent out of the Spill Compensation Fund before the lien comes into existence. *Simon v. Oldmans*

*Tp.*, 203 *N.J.Super.* 365, 373, 497 *A.*2d 204 (Ch.Div.1985). CRDA concedes that while it undertook cleanup efforts as contemplated by *N.J.S.A.* 58:10–23.11g(d)(4), the costs of remediation were not paid from the Spill Compensation Fund, and thus, it can not assert a lien against the Property under the Spill Act.

A condemnor, however, may recover remediation costs without the benefit of a lien under the Spill Act. "[T]he condemnor may seek an order requiring a portion of the award to be set aside to satisfy the condemnee's clean-up and transfer obligations." *Suydam, supra,* 177 *N.J.* at 7, 826 *A.*2d 673; *see also* Pressler, *Current N.J. Court Rules,* comment on *R.* 4:73–9 (2006) (stating that on motion for withdrawal of funds, the condemnor may require that the account maintain "a sufficient amount to cover estimated environmental remediation costs"). Once the valuation of the property is complete, "a portion of the award sufficient to cover cleanup costs is escrowed or held in trust until the exact amount of cleanup costs has been determined." *Suydam, supra,* 177 *N.J.* at 25, 826 *A.*2d 673 (quoting 7A *Nichols on Eminent Domain,* § 13B.03, ¶ 4 (Patrick J. Rohan & Melvin A. Reskin eds., 3d ed.2002)). At this point, the owner's liability for the discharge is determined, and a corresponding percentage of the cost of remediation is disbursed from the trust or escrow account to the condemnor. *Ibid.* (citing 7A *Nichols, supra,* § 13B.03, at ¶ 4). "[T]he surplus, if any, is paid to the [condemnee]." *Ibid.* (quoting 7A *Nichols, supra,* § 13B.03, at ¶ 4).

As the Court stated, it "would be unfair ... to value the property as if remediated and allow the condemnee to withdraw that enhanced amount without a withholding to secure the transactional costs" spent to remediate and transfer the property. *Suydam, supra,* 177 *N.J.* at 26, 826 *A.*2d 673. "In those circumstances[,] the condemnee could disappear or dissolve leaving the condemnor without a cleanup remedy."[1] *Ibid.*

---

[1] We note that a condemnor has an alternate recourse other than the trust escrow approach to recover cleanup costs. Costs that are incurred as a result of

*Suydam* is instructive in resolving the issue before us. In *Suydam,* the Court discussed priority as between the condemnor's right to recover remediation costs and the condemnee's right to just compensation. *Suydam* determined the order of priority between creditors to take from the condemnor's just compensation award based on the priority of their liens against the real property. The Court held that remediation costs are set-aside, are not an interest in the res, and "do not belong to the condemnee." *Id.* at 26, 826 *A.*2d 673.

■ We hold that where a municipality seeks to satisfy a municipal tax lien from funds deposited into court representing the fair market value of the property in a condemnation proceeding as if unaffected by adverse environmental conditions, the tax lien may only be satisfied from any surplus funds on deposit after the condemnor recoups the costs expended in the cleanup of the property. Cleanup and remediation costs are transactional costs attendant to the condemnation proceeding. *Ibid.; Cat In The Hat, supra* note 2, 177 *N.J.* at 34, 37, 42, 826 *A.*2d 690. It is not that these costs take "priority" over other claims, but that they are part of the condemnation proceeding for which the condemnor is entitled to be satisfied before the proceeding is properly concluded.

■ In a condemnation proceeding, the contaminated property "is to be valued as if it has been remediated." *Suydam, supra,* 177 *N.J.* at 7, 826 *A.*2d 673. "[E]vidence of contamination [should be] excluded from the eminent domain valuation," to ensure that the valuation represents "the full value of the property if it were uncontaminated." *Id.* at 25, 826 *A.*2d 673. The condemnor deposits the fair market value sum into court, and performs the cleanup

cleanup and removal of hazardous substances may be recovered in a subsequent, separate contribution proceeding against the dischargers of those substances. *N.J.S.A.* 58:10–23.11f(a)(3); *Suydam, supra,* 177 *N.J.* at 18, 826 A.2d 673; *see also N.J. Transit v. Cat In The Hat, LLC,* 177 *N.J.* 29, 32, 826 A.2d 690 (2003) (*Cat In The Hat*) (holding valid a clause reserving the right to pursue cost-recovery action against condemnee for cleanup costs).

of the contamination on the property. Subsequently, either 1) at the time of the taking, or 2) on a motion to withdraw, the trial court should order that the estimated cleanup and other transaction costs be retained in the trust account. *Id.* at 7, 826 *A.*2d 673; *Cat In The Hat, supra* note 2, 177 *N.J.* at 37, 826 *A.*2d 690. On distribution, the estimated cleanup costs remain separate; and the balance represents the monetary equivalent of the owner's interests in the property, against which municipal tax liens have first priority,[2] other creditors take next, and the condemnee receives any surplus.

Here, the Property was valued in 2000, at $55,200, which was determined to be the "market value ... as if unaffected by adverse environmental conditions." The verified complaint states that the estimated cost of cleansing the Property of the environmental conditions would run between $130,000 and $200,000, and the actual cleanup costs totaled $257,834.56. Considering the public policy promoting financial investment in the City pursuant to the Casino Reinvestment Development Authority Act, *N.J.S.A.* 5:12–153 to –183; the purpose of the Spill Act; and that the City ultimately benefits from CRDA's cleanup, we determine that CRDA should not be left without a remedy to recoup its cleanup cost. *Suydam, supra,* 177 *N.J.* at 26, 826 *A.*2d 673. Since CRDA's remediation costs must be paid before other interests in the property are satisfied, and the sum on deposit is insufficient to cover the cleanup costs, we conclude that CRDA is entitled to the entire sum of $55,200.

Accordingly, we reverse the order of February 22, 2005; and remand to the trial court for entry of an order directing the City to redeposit the funds into court, and granting CRDA's motion to withdraw the original deposit, together with interest accrued thereon.

---

[2] Unless it is found subordinate to a lien of the State for recoupment of environmental contamination cleanup costs under the Spill Act. *N.J.S.A.* 58:10–23.11f(f).