**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5122-17T3

JOHN G. WEBB, III, ESQ.,

     Plaintiff,

v.

PAUL FIORAVANTI,

     Defendant-Respondent,

and

PCE INVESTMENT
BANKERS, INC.,

     Defendant-Appellant.

_____

          Argued September 9, 2019 – Decided October 4, 2019

          Before Judges Fasciale, Moynihan and Mitterhoff.

          On appeal from the Superior Court of New Jersey, Law
          Division, Morris County, Docket No. L-1549-16.

          Justin D. Santagata argued the cause for appellant
          (Kaufman Semeraro & Leibman, LLP, attorneys; Justin
          D. Santagata, on the briefs).

Merrill M. O'Brien argued the cause for respondent (O'Brien Thornton LLC, attorneys; Merrill M. O'Brien, on the brief).

PER CURIAM

Defendant PCE Investment Bankers, Inc. (PCE) appeals from the trial court's: June 7, 2018 order of disposition following a bench trial in an interpleader action filed by plaintiff John G. Webb III; July 10, 2018 "order denying new judgment"; and August 31, 2018 order enforcing defendant Paul Fioravanti's writ of execution.[1] Having reviewed the record and guided by our standards of review and applicable law, we affirm.

In his interpleader complaint, filed July 12, 2016, Webb alleged he had represented Teleios, Inc., formerly known as Arete Development, Inc. (Arete) until he withdrew as counsel "at the end of May[] 2016." Arete's shareholders— the Etteres, a father and his three sons—entered into an employment agreement with Fioravanti, dated November 4, 2013, which, in part, provided:

> If [Arete's] Board in its discretion effects a sale, merger or other significant reorganization of the ownership of the Company or of substantially all of its assets during the Term, you shall receive a commission, or, "success fee," payable at the closing of any change of control of

---

[1] In its merits brief, PCE did not contest any other aspect of the August 31, 2018 order, including the trial court's denial of its request for a stay pending appeal. As such, we will not address that denial. See Jefferson Loan Co. v. Session, 397 N.J. Super. 520, 525 n.4 (App. Div. 2008).

2

the Company or sale of substantially all of the Company's assets in an amount equal to ten percent (10%) of the net transaction value.

PCE is self-described in its merits brief as "a large investment bank that, among other things, is engaged in the business of procuring buyers for companies." Webb alleged in his complaint that PCE was engaged by Arete "to assist with the planned sale of its business" and that "with the assistance of PCE and Fioravanti, entered into an asset-purchase agreement with Glotel, Inc." in 2015. PCE's agreement with Arete provided in part:

> At the closing of a Transaction, you shall pay to us a cash fee (the "Sale Transaction Fee") of (5.0%) percent of the Aggregate Consideration (as defined below) in connection with the Transaction. Notwithstanding the immediately preceding sentence, the minimum Sale Transaction Fee will be $200,000.
>
> . . . .
>
> The foregoing consideration will be due to us, as and to the extent provided above, regardless of whether or not you have engaged or are obligated to pay a fee or commission to any investment banker, broker, or advisor.

The proceeds of the asset purchase were insufficient to meet Arete's obligations to Fioravanti and PCE, and each obligee notified Webb of a claimed entitlement to $40,000 of the proceeds (the funds or the $40,000)—the amount remaining after what was thought to be all of Arete's creditors were paid—held

3

by Webb in his attorney trust account. Webb's complaint alleged "these funds are due to one or more of the [d]efendants, but each party's entitlement and claim to the funds is a matter in dispute that must be resolved by the [c]ourt." Webb demanded judgment permitting him to deposit the $40,000 into court, requiring defendants to interplead any claims they had to the funds and exonerating him from any liability concerning the funds.

PCE filed a counterclaim alleging it, not Fioravanti, procured the buyer for Arete's assets; its claim, therefore, was superior to Fioravanti's. It also filed cross-claims against Fioravanti who PCE said was its "primary contact" in negotiating its agreement with Arete. PCE alleged Fioravanti failed to disclose his "success fee" agreement prior to its engagement and, if that fee had been disclosed, PCE either would not have entered into the agreement or it would have required Fioravanti to subordinate his fee to PCE's entitlement. PCE specifically claimed "Fioravanti fraudulently omitted a material fact from PCE at or before PCE's engagement letter and then again during negotiations for the sale of" Arete's assets and, as such, "[he] should have no claim to the $40,000 held in escrow." It also alleged unjust enrichment and unclean hands, justifying the denial of any award of the funds to Fioravanti and the award of those funds to PCE.

4

Webb deposited the funds into court pursuant to a consent order to which Fioravanti, PCE and Webb agreed; the order also provided Webb was dismissed from the action with prejudice and without liability.

Following the bench trial, although the trial court was "convinced that Arete has substantial financial obligations to each" defendant for fees due in connection with the asset purchase, the court concluded "the remaining amount owed to them is not properly before this [c]ourt." The court found that the parties did not show that there was an agreement with regard to the funds and neither had shown exclusive entitlement to them.

The trial court rejected Webb's testimony that Arete had disclaimed the funds. The court concluded the funds still belonged to Arete, and that they "not be distributed to anyone without the company's consent, especially since Arete was not a party to this action." The court ruled both defendants were "at liberty to seek satisfaction of their claims by . . . appropriate legal action." The court entered an order of disposition allowing an Arete representative to, upon motion, collect the funds and, inasmuch as neither defendant had "shown entitlement to the funds," it denied "[a]ll other requests" for relief.

A-5122-17T3

PCE filed a motion[2] "pursuant to [Rule] 4:49 to vacate the [court's] 'order of disposition' and for the [c]ourt to enter new findings of fact and conclusions of law" and "to take additional testimony on the limited issue of Arete['s] disclaimer of its interests [in] the $40,000." PCE proffered a letter it received after the trial concluded which it claimed Webb mentioned at trial; the letter, from one of Arete's successor's shareholders, was dated July 14, 2016—two days after the interpleader complaint was filed. It read:

> We acknowledge that you are holding $40,000.00 in your attorney trust account resulting from the transaction between Teleios, Inc., formerly known as Arete Development, Inc., and Glotel, Inc. We understand that both Paul Fioravanti and PCE Investment Bankers, Inc. ("PCE") have made claims to those funds.
>
> We have no objection to you releasing those monies to the Superior Court Account through an interpleader action. We also do not object, in the event of a settlement, to you releasing those monies to either Paul Fioravanti and/or PCE. We understand and

---

[2] Although PCE requested oral argument, there is no indication the trial court granted it. The court should have granted the request because the motion did not involve a pretrial discovery or calendaring issue. R. 1:6-2(d). The court also did not provide a reason in the order as to why it did not grant oral argument. See LVNV Funding, L.L.C. v. Colvell, 421 N.J. Super. 1, 5-6 (App. Div. 2011). PCE, however, mentions the trial court's failure to grant oral argument only in the procedural and factual background section of its merits brief and does not make any further argument on appeal; as such we will not address this issue. See Jefferson, 397 N.J. Super. at n.4.

A-5122-17T3

acknowledge that Teleios, Inc. has no claim to those funds.

PCE also asserted Arete had been on notice of the interpleader action and never sought to appear.

The trial court denied the motion explaining, "[a]t trial, PCE failed to show it is entitled to the money" and "[e]ven assuming (for argument's sake) Arete 'has disclaimed interest in the $40,000,' it does not follow that PCE is therefore entitled to the money." The court concluded PCE had "failed to show that the [c]ourt erred in concluding that [it] did not establish at trial that it was entitled to the money."

Subsequently, Matthew Ettere, on behalf of Arete, filed a motion to withdraw the funds, asserting Arete still owed tax obligations and all parties agreed "the tax liability of Arete would be a priority, and would be satisfied before any payments to Fioravanti or anyone else would be made." Fioravanti opposed the motion and filed a cross-motion seeking to enforce a writ of execution he had obtained against Teleios in a separate action; he also requested the trial court open the record to admit the same July 14, 2016 letter previously proffered by PCE in its motion to vacate the judgment if the trial court had "any concern with the veracity of attorney Webb's sworn testimony that Teleios had disclaimed ownership of the $40,000." PCE also opposed Teleios's motion and

7

filed a Rule 4:50-1 cross-motion for relief from judgment and for a stay, arguing Arete no longer existed and, as such, Ettere did not have authority to file the motion to withdraw funds, and that the "evidence submitted by Matthew Ettere . . . that Arete has no claim to the $40,000" justified relief.

The trial court recognized and enforced Fioravanti's judgment and writ of execution, allowing him to levy on the funds; determined Arete's motion was "moot because of Fioravanti's [w]rit"; and denied PCE's motion because its "claims, even if they eventually proceed to judgment, would be secondary or subordinate to the levy of Fioravanti."

PCE argues that: the trial court erred in determining Arete never disclaimed the funds; the court's "order of disposition" was "wholly unsupportable"; and the trial court misunderstood interpleader and avoided adjudicating PCE's claims against Fioravanti that would have established its priority to the funds.

Our review of "the findings and conclusions of a trial court following a bench trial are well-established." Allstate Ins. Co. v. Northfield Med. Ctr., PC, 228 N.J. 596, 619 (2017). While we review the trial court's interpretation of law de novo, Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995),

we give deference to the trial court that heard the witnesses, sifted the competing evidence, and made reasoned conclusions. Reviewing appellate courts should "not disturb the factual findings and legal conclusions of the trial judge" unless convinced that those findings and conclusions were "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice."

[Allstate Ins. Co., 228 N.J. at 619 (alteration in original) (citations omitted) (quoting Griepenburg v. Township of Ocean, 220 N.J. 239, 254 (2015)).]

We do not "engage in an independent assessment of the evidence as if [we] were the court of first instance," State v. Locurto, 157 N.J. 463, 471 (1999), and will "not weigh the evidence, assess the credibility of witnesses, or make conclusions about the evidence," Mountain Hill, LLC v. Twp. of Middletown, 399 N.J. Super. 486, 498 (App. Div. 2008) (quoting State v. Barone, 147 N.J. 599, 615 (1997)). "Reversal is reserved only for those circumstances when we determine the factual findings and legal conclusions of the trial judge went 'so wide of the mark that a mistake must have been made.'" Llewelyn v. Shewchuk, 440 N.J. Super. 207, 214 (App. Div. 2015) (quoting N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007)). "If we are satisfied that the trial judge's findings and result could reasonably have been reached on sufficient credible evidence in the record as a whole, his [or her] determination should not

be disturbed." Pioneer Nat'l Title Ins. Co. v. Lucas, 155 N.J. Super. 332, 338 (App. Div. 1978).

This action was procedurally misguided from Webb's filing of the complaint. As the trial court recognized in its statement of reasons accompanying its August 31, 2018 order, plaintiff filed an action pursuant to Rule 4:31. He did not seek leave of the court to deposit the funds with the Superior Court Trust Fund pursuant to Rule 4:57-1, under which, upon deposit control is relinquished to the court, Kostick v. Janke, 221 N.J. Super. 37, 40-41 (Law Div. 1987), aff'd, 223 N.J. Super. 311, 314-15 (App. Div. 1988), "until it adjudicates the rights of the parties to the monies," Granduke v. Lembesis, 256 N.J. Super. 546, 549 (App. Div. 1992). If the deposit is made pursuant to Rule 4:57-1, "[q]uestions of ownership and entitlement depend on the adjudication of the underlying claims between the parties." Ibid.

In an interpleader action filed under Rule 4:31, "[p]ersons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability." Webb was not a proper plaintiff because, as the custodian of the funds deposited in his attorney trust account, he was not exposed to any liability. Attorneys holding funds in an attorney trust account are not ordinarily subject

to liability.  Liberty Mutual Ins. Co. v. Cressman, 336 N.J. Super. 67, 70 (App. Div. 2000).  In Cressman, we held, "an attorney who simply knows of a client's debt has no duty to pay the creditor from the proceeds of a settlement" unless an equitable basis is shown, "such as inducing to its detriment [the creditor's] reliance upon [counsel's] representation that [the creditor's] lien would be satisfied."  Ibid.

No claim was made against Webb in this action.  Indeed, he was dismissed, per the terms of the consent order by which the funds were deposited into court, "with prejudice [and] without liability to either party in this interpleader action only."  Although Arete or its successor could have instituted an action under Rule 4:31, Webb had no authority to do so.  He was no longer Arete's or Teleios's counsel so he could not act in their stead.  Thus, the interpleader action was procedurally flawed from its inception.

Furthermore, deferring to the trial court's assessment of the witnesses' credibility on the stand, we discern the trial court's conclusion that Arete did not disclaim the funds is supported.  Notwithstanding Webb's testimony that "several months before" he filed the interpleader complaint, Arete had "disclaimed in conversations with [him] any interest in the $40,000" and that prior to filing the complaint, his counsel received the letter from Arete's

11

successor stating that it made no claim on the funds held in his trust account,[3] the court was "dubious to accept any representations that Arete has no interest in, or that it relinquished its rights" to the funds, rejecting both Webb's testimony about his conversation with his client—whose identity and authority was not disclosed—and about the July 12, 2016 letter. Simply put, the trial court did not find competent, credible evidence that Arete disclaimed the funds.

We are unconvinced that the July 12 letter, later produced when PCE moved for a new trial, was sufficient to clearly and convincingly establish the appearance that there was a miscarriage of justice under the law requiring the grant of relief under Rule 4:49-1(a).[4] The letter was authored by Jonathan Ettere. Although he indicated he was writing "for Teleios, Inc.," the letter does

---

[3] The letter is actually dated two days after the complaint was filed and is addressed to Webb, not his counsel.

[4] We note the trial court, in deciding PCE's post-trial motion, concluded PCE failed to show that the court erred in concluding PCE had not established at trial its entitlement to the funds and "[i]n fact, PCE [did] not even attempt to show how the [c]ourt erred in concluding" PCE did not establish that entitlement. The trial court's decision seems to address a motion made pursuant to Rule 4:49-2. In any event, our "review of a trial court's action on a new trial motion is essentially the same as that controlling the trial judge," Dolson v. Anastasia, 55 N.J. 2, 7 (1969), "except that the appellate court must afford 'due deference' to the trial court's '"feel of the case,"' with regard to the assessment of intangibles, such as witness credibility." Jastram v. Kruse, 197 N.J. 216, 230 (2008) (quoting Feldman v. Lederle Labs., 97 N.J. 429, 463 (1984)).

not set forth his authority to act on the corporation's behalf or that Teleios authorized him to state that it had no objection to the release of the funds to the court's account through an interpleader action or to releasing the funds to either PCE or Fioravanti, stating, "We understand and acknowledge that both [Fioravanti and PCE] have made claims to those funds."

Arete's motion to release the funds, made by Matthew Ettere, was ostensibly filed on Arete's behalf, contradicting Jonathan Ettere's claims. While we do not agree with the trial court that "Arete's motion confirms that Arete agrees that the monies are its property" because, like Jonathan's actions, there is no evidence Matthew had authority to act for the corporation, the evidence does not support that the factual findings and legal conclusions of the trial judge went "so wide of the mark" that reversal and a new trial is required. See Llewelyn, 440 N.J. Super. at 214.

The procedural missteps also left the trial court without a basis to decide the parties' claims to the funds. As noted, Arete was never joined as a party; neither was Teleios. PCE never instituted suit—as Fioravanti did—against Arete or Teleios for its contractual fee. Thus, PCE never judicially established

its underlying claim to the funds.[5]  Such was required before PCE's claims of priority over Fioravanti to Arete's funds could be adjudicated.

In a true interpleader action instituted by Arete pursuant to <u>Rule</u> 4:31, the underlying claim could have been resolved, thus establishing PCE's entitlement to the funds.  And if Fioravanti and his claim were joined, <u>see</u> <u>R</u>. 4:27-1; 4:28-1; 4:29-1, the court could have determined the parties' respective entitlement, if any, to the funds.  Reading <u>Rules</u> 4:27-1, 28-1 and 29-1 in para materia with <u>Rule</u> 4:31, and the entire controversy doctrine, <u>Rule</u> 4:30A, we conclude the procedural errors thwarted the goal of avoiding waste, inefficiency, delay and unfairness to parties "and the need for complete and final disposition through the avoidance of 'piecemeal decisions,'" <u>Cogdell v. Hosp. Ctr. at Orange</u>, 116 N.J. 7, 15 (1989), and joining all parties claiming an interest in the same property, <u>see generally</u> <u>Kessler v. Tarrats</u>, 191 N.J. Super. 273, 312-13 (Ch. Div. 1983) (holding a party seeking to enforce a lien against a property "must join such persons as will be affected by the enforcement of the lien" including prior lienholders), <u>aff'd</u>, 194 N.J. Super. 136 (App. Div. 1984).

---

[5]  We also note Fioravanti's action against Arete, disclosed in the <u>Rule</u> 4:5-1 certification incorporated in his answer to Webb's complaint, was never joined in the interpleader action.

A-5122-17T3

We thus affirm the trial court's initial decision to return the funds to Arete, its denial of PCE's motion to vacate its prior judgment and its order enforcing Fioravanti's writ and denying PCE's cross-motion for relief from judgment. In light of our decision, we need not address PCE's other claims.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-5122-17T3